184 N.J. Super. 600 (1982)
446 A.2d 1249
TAMI STARKMAN AND DORA BIRNBAUM, PLAINTIFFS,
v.
ROBERT SIGMOND AND BARBARA SIGMOND, HIS WIFE, AND PRUDENTIAL PROPERTY AND CASUALTY INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided March 25, 1982.
*603 Ira Rabkin for plaintiffs (Molotsky, Rabkin & Gross, attorneys).
Michael Weiss for defendants Sigmond (Morris Goldsmith, attorney).
DEIGHAN, J.S.C.
The question to be resolved herein is whether plaintiff mortgagors are entitled to the proceeds of a fire insurance policy (which insures the interest of both the mortgagors and the mortgagees) to rebuild the residence or must the proceeds be applied in reduction of the mortgage where the value of the vacant land exceeds the balance due on the mortgage which has been kept current. Research has revealed no New Jersey case which addresses this problem of payment of the fire insurance proceeds where the security is not impaired and the mortgage is not in default. It is held that under the facts of this case the mortgagors are entitled to the proceeds to rebuild the residence.
*604 Plaintiff mortgagors Tami Starkman and Dora Birnbaum executed a purchase money mortgage to defendant mortgagees Robert Sigmond and Barbara Sigmond, his wife, in the amount of $60,000. A fire loss occurred on the mortgaged premises; mortgagees demand that the insurance proceeds be applied to the outstanding mortgage balance. Plaintiff mortgagors seek the proceeds of the fire insurance to rebuild the residence. The essential facts are not in dispute and both parties move for summary judgment.
After the complaint was filed and before filing an answer, defendant mortgagees moved for summary judgment. At the time the motion was heard the insurance company, Prudential Property and Casualty Insurance (Prudential), was not a party to the action. The court determined it should have the benefit of Prudential's position on its obligation under the insurance policy, and on August 23, 1981 denied defendants' motion. Thereafter, plaintiffs filed an amended complaint against Prudential; defendants Sigmond filed an answer and crossclaim against Prudential. Prudential filed its answer, including a third-party complaint against plaintiffs' husbands, Morris Starkman and Simon Birnbaum, asserting they were the real parties in interest.
Subsequently, Prudential agreed to issue a $135,000 check in settlement of all claims made under the insurance policy. After application by plaintiffs, the court on December 21, 1981, by consent of the parties, ordered Prudential to issue the $135,000 in two drafts: one in the sum of $60,000 payable to both mortgagees and mortgagors and the other in the sum of $75,000 payable to plaintiff mortgagors only. Thereafter, plaintiffs, defendants Sigmond and Prudential entered into a consent order to invest the $60,000 pending a determination by the court of the rights of the parties. Prudential required a release from the Sigmonds before it would issue the $60,000 check. On February 16, 1982 the court entered another consent order which provided that payment of the $60,000 would be in a nature of an interpleader. The Sigmonds were to execute the release and assert *605 any claims against the fund which may have been asserted against Prudential.
On January 6, 1981 plaintiffs purchased a house and lot located at 112 South Sacramento Avenue, Ventnor, New Jersey from defendants for $150,000. Defendants took back a purchase money mortgage in the sum of $60,000 with interest at the rate of 10% payable in monthly amortization installments of $525. The mortgage is for a 30-year term but has a "balloon" at the end which requires full payment to be made on January 6, 1986, i.e., the entire mortgage is payable within five years. The mortgage also required the mortgagors to maintain hazard insurance on the premises for the benefit of the mortgagees. Prudential issued the insurance policy to plaintiffs as the "insureds"; defendants are listed as mortgagees on the face of the insurance policy. The loss payable clause to the mortgagee appears in the body of the policy and provides:
Loss, if any, under this policy, shall be payable to the mortgagee ..., named on the first page of this policy, as interest may appear ..., and this insurance as to the interest of the mortgagee ..., shall not be invalidated by any act or neglect of the mortgagor....
This clause is known as a "union mortgage clause" because it insulates the mortgagee from policy defenses which may be available against the mortgagor. 5A Appleman, Insurance Law and Practice, § 3401 at 282 (1970). The union mortgage clause is to be distinguished from an "open loss payable clause." Under an open loss clause the policy merely identifies who is to collect the proceeds. Ibid. "In the open form, the indemnity of the mortgagee is subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in the mortgagor's hands." 5A Appleman, op. cit., § 3401 at 293.[1]
On February 23, 1981 the house was substantially destroyed by fire. On November 17, 1981 plaintiffs received notification from the building inspector of Ventnor to demolish the dwelling *606 because the fire damage amounted to total destruction creating a dangerous situation  the walls could collapse and youngsters were playing on the rotting floors. Plaintiffs submitted a certification from a real estate appraiser evaluating the vacant land at approximately $71,500, an amount which is at least $10,000 in excess of the outstanding balance on the mortgage. Plaintiffs have kept the monthly mortgage payments current.
Plaintiffs argue that since the mortgage is not in default and the security is not impaired, defendants cannot insist on applying the proceeds of the insurance to pay off the mortgage debt. Plaintiffs place primary reliance on the terms and conditions for acceleration in the mortgage and note. Plaintiffs observe that the provisions of the note and mortgage were negotiated[2] and these documents are silent as to acceleration in the event of fire. They contend that if defendants use the proceeds to satisfy the mortgage debt, theywill be deprived of the loan from defendants and defendants are currently getting what they bargained for, i.e., continuous monthly payments over a period of time.
In contrast, defendants rely on the terms of the insurance policy. They argue that the policy is an independent agreement between the insurer and the mortgagees and that their rights cannot be affected by any acts of the mortgagors in rebuilding. Defendants claim their rights under the insurance policy became vested at the time of the fire and no subsequent act of the mortgagor can defeat their right to the proceeds. Defendants suggest that payment of the $60,000 to plaintiffs will result in a windfall to plaintiffs.[3] Defendants maintain that plaintiffs will *607 have realized $56,000 profit within a few months. While defendants acknowledge that part of the proceeds of the insurance represent a loss of contents by plaintiffs, they suggest that the contents claim would not in any way approximate $56,000.
The standard mortgage clause creates an independent contract of insurance, for the separate benefit of the mortgagee, engrafted upon the main contract of insurance contained in the policy itself. 495 Corp. v. N.J.Ins. Underwriting Ass'n, supra, 173 N.J. Super. at 123, citing Reed v. Firemen's Ins. Co., 81 N.J.L. 523, 526, 80 A. 462 (E. & A. 1910); 5A Appleman, op. cit., § 3401 at 292. An independent agreement exists between the mortgagee and the insurer. Employers' Fire Ins. Co. v. Ritter, 112 N.J. Eq. 418, 420 (Ch. 1933). There are two beneficiaries of the insurance policy, the owner and the mortgagee, each with distinct and dissimilar rights. Id. at 421.
One line of cases and commentators state as a general rule that the mortgagee can recover the insurance proceeds regardless of the value of the remaining security once a fire loss occurs. E.g., Walter v. Marine Office of America, 537 F.2d 89, 97-99 (5 Cir.1976) (applying Louisiana law); Savarese v. Ohio Farmer's Ins. Co., 260 N.Y. 45, 53, 182 N.E. 665, 667, (Ct.App. 1932); 5A Appleman, op. cit., § 3405 at 320; 29 N.J. Practice (Cunningham & Tischler, Law of Mortgages), § 164 at 756 (1975). The rationale of these cases results from a singular approach which focuses solely on the insurance policy. The policy is categorized as an independent contract[4] between the insurer and the mortgagee. Once a fire loss occurs, the mortgagee's *608 right to the insurance proceeds vests. Any future act of the mortgagor which restores the property to its pre-fire condition is deemed irrelevant since the mortgagee is entitled to immediate payment after the fire.
Defendants Sigmond urge that the following section of the insurance policy requires direct payment to the mortgagee:
4. Mortgage Clause
Loss, if any, under this policy, shall be payable to the mortgagee (or trustee) named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described, in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgage. ... [Emphasis supplied]
The foregoing clause does not establish that losses are to be paid to the mortgagees, but rather sets the order of priority for payment if there is more than one mortgagee. The clause negatives proportionate payment by the insurer as between the mortgagees in the event that the mortgage claims exceed the amount to be paid by the insurance company or in the event both mortgagees make a claim for the proceeds of insurance.
Other courts and commentators adopt the opposite rule of law and allow the mortgagor to recover the insurance proceeds in order to rebuild the damaged property. E.g., Schoolcraft v. Ross, 81 Cal. App.3d 75, 146 Cal. Rptr. 57 (D.Ct.App. 1978); Fergus v. Wilmarth, 117 Ill. 542, 7 N.E. 508 (Sup.Ct. 1886); Cottman Co. v. Continental Trust Co., 169 Md. 595, 182 A. 551 (Ct.App. 1936); Osbourne, Nelson & Whitman, Real Estate Finance Law (3 ed. 1979), § 4.15 at 150, 46 C.J.S.2d, Insurance, § 1147 at 29 (under authority of a covenant to repair).
Various analytical approaches allow courts to reach this result. Some courts conclude that the purpose of the insurance is to maintain the security for the mortgage debt  if the property is restored, the security has not been impaired. Therefore, the purpose of the insurance has been fulfilled as to the mortgagee's interest and the mortgagor recovers the proceeds. Cottman v. Continental Trust Co., supra.
Osbourne, Nelson and Whitman, in their treatise Real Estate Finance Law (3d ed. 1979), § 4.15 at 150, comment:

*609 At least in the absence of mortgage provisions to the contrary, it would seem that in the modern standard mortgage policy context where the mortgage is not in default, the mortgagor normally should be able, where rebuilding is practical, to insist upon the application of the insurance proceeds to rebuild the premises. To be sure, to permit the mortgagor to defeat the mortgagee's right to recovery by rebuilding may force the mortgagee to litigate the extent and sufficiency of repairs. On the other hand, it is almost always the mortgagor who is paying the premiums on the casualty insurance policy. Moreover, while permitting the mortgagee to utilize the insurance proceeds to pay the mortgage debt presumably benefits the mortgagor by rendering the property free from the mortgage lien to the extent of the loss, in many cases the mortgagor probably cannot afford to rebuild or is unable to obtain new mortgage financing for that purpose. Thus, on balance, it would seem more equitable in most cases to permit the mortgagor to rebuild and have the insurance applied to that purpose.
There is precedent for this view. One leading case is Cottman Co. v. Continental Trust Co., supra. There, plaintiff mortgaged its tugboats to secure a debenture with defendants as trustee (mortgagee). Pursuant to the requirements of the mortgage, insurance was taken out to protect the interest of the trustee (mortgagee). Thereafter, several of the tugs were damaged and repaired at plaintiff's expense. The insurer paid the claim of the trustee, who refused to reimburse plaintiff. Plaintiff sued the trustee for the proceeds of the insurance. In reversing a judgment for defendant trustee and holding that plaintiff mortgagor was entitled to the proceeds of the insurance, the Maryland Court of Appeals stated:
Few cases, apparently, have reached appellate courts where the use of the insurance money for the repair and restoration of the security has been combatted by the recipient mortgagee. In such cases the argument is made that by virtue of the replacement or restoration, the creditor is left in the same position as he was before the loss, and therefore has no ground of complaint. It cannot be denied that if the restoration of the security, at the expense of the debtor, to the value it had before the loss or damage, leaves the parties in statu quo, then the retention of the insurance money by the creditor, mortgagee, or trustee, as additional security, would put the holder in a better position than he had originally bargained for. The theory of insurance, however, does not contemplate a resulting profit to the insured, or his mortgagee or other creditor. The interest of the mortgagee is to maintain the equilibrium of debt and security; and if, by the application of the insurance money to the upkeep of the security, that parity would be continued, it is not inequitable to require the payee of the fund to transfer the same to the debtor for that purpose, upon properly safeguarding its application to that end. [169 Md. at 601-02, 182 A. at 554]
*610 In Schoolcraft v. Ross, supra, the deed of trust (mortgage) specifically gave the beneficiary (mortgagee) an option to use the insurance proceeds to rebuild or to apply in reduction of the mortgage debt. The mortgagee, relying on the option clause, elected to apply the proceeds to the debt despite the mortgagor's request to use the proceeds for rebuilding. The mortgagor could not afford to continue to pay the mortgage and also pay rent for an apartment, and thus defaulted in payment on the mortgage. In an action by the mortgagor for damages the California court held:
[T]he right of a beneficiary (e.g., mortgagee) to apply insurance proceeds to the balance of a note secured by a deed of trust must be performed in good faith and with fair dealing and that to the extent the security was not impaired the beneficiary must permit those proceeds to be used for the cost of rebuilding. [81 Cal. App.3d at 77, 146 Cal. Rptr. at 58; emphasis supplied]
Since there was no evidence of the impairment of the security, the court held the mortgagee had no right to the funds. The court, even in face of the mortgagee's option, observed:
Forcing the buyer to pay off in advance would result in a buyer losing certain property rights contemplated by the parties, among them the benefit of a long term loan which permits the buyer to spread the purchase price of the property over a long time. [81 Cal. App.3d at 81, 146 Cal. Rptr. at 60; emphasis supplied]
The court found no evidence of impairment of the security and concluded "To the extent the security was not impaired, [mortgagee] had no right to the funds." Ibid.
Cottman and Savarese, both supra, demonstrate a general principle that hazard insurance is to protect the mortgagee's interest if the security for the debt is impaired. Absent an impairment, the mortgagee has no right to insist on payment from the insurer. The proceeds are to be paid to the insured mortgagor to effect the repair. New Jersey has recognized impairment of security as a rationale for recovery by mortgagees in other situations. "[T]he theory of recovery by a mortgagee is indemnity against an impairment of the mortgaged property...." 495 Corp. v. N.J. Ins. Underwriting Ass'n, supra, 173 N.J. Super. at 118 (foreclosure). A similar principle of impairment of security of mortgage has been applied to condemnation *611 proceedings. In Transportation Comm'rs v. Kastner, 179 N.J. Super. 613 (Law Div. 1981), a part of the mortgaged property was taken by condemnation. The mortgage made no provision for payment of the condemnation award in the event of a partial taking. In holding that the mortgagees were not entitled to have the condemnation award paid the court stated:
[A] lienholder cannot enforce his lien against the condemnation award unless the remaining property is of insufficient value to satisfy his lien. [at 615]
If the proceeds are paid to the mortgagees in the present case, mortgagors will be damaged to the extent that they will lose the benefit of a long-term loan which was bargained for. The court takes judicial notice of the current prevailing high interest rates and the general scarcity of mortgage money, particularly for construction mortgages. If plaintiffs were forced to obtain a mortgage in the open market, it certainly would be greatly to their disadvantage and at a much higher interest rate than that to which plaintiffs and defendants Sigmond had bargained for. If construction mortgage financing were not available, plaintiffs could not even rebuild their home.
Moreover, there is evidence that the parties did not intend to accelerate the debt in case of fire. Under the insurance policy the insurer has the option to repair, rebuild or replace the property destroyed or damaged within a reasonable time and on giving notice of its intention to do so within 30 days after the receipt of the proof of loss. The dissent in Savarese v. Ohio Farmer's Ins. Co., supra, focused on the insurer's policy option to repair the property or to pay the loss as evidence of the purpose of the policy to maintain the security.
[T]his clause [option to repair] in the agreement furnishes some indication that the purpose of the policy and the provision therein contained [to pay the mortgagee] was to protect the mortgagees interest in the property only if such damage was not repaired. [260 N.Y. at 60, 182 N.E. at 670 (Lehman, J. dissenting); emphasis supplied]
If the insurer had elected to exercise that option, both mortgagees and mortgagors would be bound. See 5A Appleman, op. cit., § 3405 at 317. This provision, coupled with the covenant to repair in the mortgage, indicates that the purpose of *612 the insurance was to protect the mortgagees' interest if the security was impaired. As a further indication of this intent the parties specifically deleted a provision in the note which would have permitted acceleration in the event of a breach of the covenant to repair. A similar provision in the mortgage was not deleted. Where acceleration provisions of a note and mortgage are in an irreconcilable conflict the note will prevail. See 55 Am.Jur.2d, Mortgages, § 176 at 304.
While a covenant to repair and a covenant to rebuild are not identical, the deletion of acceleration for breach of the covenant to repair in the note is indicative of the parties intent. The mortgagees in the present case are attempting to accelerate the debt indirectly by demanding payment of the proceeds, a right which by negotiation they specifically gave up.
Lastly, defendant mortgagees are not prejudiced by permitting rebuilding of the residence and have sustained no damages. Property insurance is a contract of indemnity. 29 N.J.Practice, op. cit., § 164 at 737. The mortgagee collects the proceeds to compensate for its loss.
It is an elementary principle of insurance law that fire insurance ... is a contract of personal indemnity, not one from which a profit is to be realized ... [T]he right to recover must be commensurate with the loss actually sustained. [Glens Falls Ins. Co. v. Sterling, 219 Md. 217, 222, 148 A.2d 453, 456 (Ct.App. 1959); emphasis in original]
Since the vacant land remains as full security for the mortgage debt, it is difficult to identify any loss sustained by the mortgagee.[5] This case differs from others in that, at the time the right to proceeds vested, unlike the Savarese, supra, rationale, the vacant land fully secured the debt. Cases which permit the mortgagee to recover refuse to take a hindsight view if the property has been restored by the trial date; the courts concentrate *613 on the impairment of the security on the date of the fire. There has never been in this case impairment for purposes of the mortgagees interest.
The court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss. [Ramsdell v. Ins. Co. of N. Amer., 197 Wis. 136, 139, 221 N.W. 654, 655 (Sup.Ct. 1928); emphasis supplied]
The court finds that mortgagees have suffered no damage as a result of the fire, and until the building is commenced they have the security of the $60,000 fund which is in escrow. They have no loss for which indemnification is required nor have they been prejudiced.
Defendants note that if the court orders the proceeds of the fire insurance to be paid to the mortgagors for rebuilding, various problems would arise: (1) Who is to decide a reasonable time for the completion of the repairs?; (2) What if the mortgagee finds that the repairs are inadequate?; (3) How can the court order a $60,000 payment to plaintiffs based on affidavits that they are going to use the money to rebuild the structure on the damaged premises?
When these questions were raised by defendants it was contemplated that the building would merely be repaired, but it now appears that the building will be completely replaced, so there will be no problem concerning the inadequacy of repairs. Undoubtedly, plaintiffs will be required to have plans and specifications prepared and then engage a building contractor to reconstruct the dwelling. Plaintiffs and their contractors will decide concerning a reasonable time for the completions for the repairs. If plaintiffs do not undertake to rebuild the residence within a reasonable time but continue the monthly mortgage payments, then defendants Sigmond will have a right to question the good faith of plaintiffs and move for supplemental relief.
The court can allay the fears of defendants Sigmond and will not order the $60,000 presently held in escrow to be paid to plaintiffs based on their affidavit. In Cottman, supra, the court *614 cited in support of its conclusion the case of Fergus v. Wilmarth, 117 Ill. 542, 7 N.E. 508 (Sup.Ct. 1886), in which a deed of trust obligated the mortgagor to procure insurance and to assign the policy to the creditor. The building on the mortgaged premises was destroyed by fire and the insurance proceeds were paid to the trustee. The court there held that since the mortgage was not in default, the trustee could not apply the proceeds to the mortgage debt, but neither could he just pay it over to the mortgagor upon a promise to rebuild. The court concluded that the equitable solution was for the trustee to hold it "until the new building should have progressed far enough to justify an expenditure of the fund in liquidating the cost of its erection." 7 N.E. at 510. Also, the court in Cottman was aware of the necessity to safeguard the fund to the creditor for the purpose of maintaining the security "upon properly safeguarding its application to that end." 182 A. at 554.
As has been indicated, the cost of construction will probably exceed the amount of insurance proceeds. Normally, under a construction contract, progress payments are made as a construction is completed. This is usually determined by the terms of the contract. The progress payments are normally coordinated with draws under a construction mortgage. The escrow funds will take the place of a construction mortgage and progress payments will be disbursed in accordance with the terms of the construction contract. Since the escrow funds are under the control of both parties, there should be adequate protection to defendants Sigmonds in preserving the security of their mortgage. If an architect is engaged to issue certificates for payment, then disbursement will be made in accordance with the architect's certificate. In order that no mechanic's liens may take precedence over the escrowed funds, the construction contract and specifications should be filed pursuant to the Mechanic's Lien Act, N.J.S.A. 2A:44-64 et seq., so that the liens of any suppliers, laborers or materialmen will attach to the proceeds due under the construction contract and not upon the land.
NOTES
[1] For a short discussion of the two clauses, see 495 Corp. v. N.J. Ins. Underwriting Ass'n, 173 N.J. Super. 114, 117, n. 2 (App.Div. 1980).
[2] Various provisions of the note were deleted pursuant to the negotiations.
[3] $135,000 (insurance proceeds)
 + 71,500 (value of lot) =
 ___________
 206,500
 - 150,000 (purchase price) =
 ___________
 $ 56,500 (profit).

[4] See discussion of union mortgage clause, supra. One court has concluded that such a clause creates an independent cause of action by the mortgagee as a third-party beneficiary of the insurance policy, not an independent contract:

The fact that practically a limitless benefit is conferred by the standard clause [union clause] upon the mortgagee makes it none the less a benefit, and, however limitless a benefit may be, it can never reach the dignity of a contract. [Walker v. Queen Ins. Co., 136 S.C. 144, 160-163, 134 S.E. 263, 269 (1926), cited in 2 Williston, Contracts, (3 ed. Jaeger 1959), § 401A at 1086, n. 6].
[5] Arguably, the mortgagees have suffered a loss by the reduction in the ratio of the debt to the value of the security. But the cost of building probably will be more than the value of the home that was destroyed; hence the mortgagees will have even greater security than the value of the destroyed dwelling.