195 N.J. Super. 614 (1984)
481 A.2d 307
GENERAL G.M.C. SALES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
ROGER S. PASSARELLA, CLAIRE PASSARELLA AND RUSSELL PASSARELLA, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1984.
Decided August 29, 1984.
*616 Before Judges BOTTER, PRESSLER and O'BRIEN.
Robert A. Goodsell argued the cause for defendants (Irwin, Post & Rosen, attorneys; Robert A. Goodsell, on the brief).
Andrew J. Wilson argued the cause for plaintiff (Laird & Wilson, attorneys; Andrew J. Wilson, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
The principal issue on this appeal is whether plaintiff, a mortgagee, is entitled to have the balance of its mortgage debt paid in full out of fire insurance proceeds or whether the defendants, property owners, have the right to use the insurance proceeds to rebuild buildings which were substantially destroyed by fire, thus preserving the mortgage security. The trial judge ordered that a portion of the fund in dispute, $145,000, be used to reduce the mortgage debt to $50,000, which he found to be the value of the land, on the theory that the land would continue to serve as security for that amount of debt, and the balance of the fund was awarded to defendants. Defendants appealed from this judgment, and plaintiff cross-appealed. We now reverse, holding that plaintiff was entitled to proceeds from the fund sufficient to pay the entire remaining mortgage debt.
Plaintiff sold the property in question to defendants in September 1979 for $180,000, taking back a fifteen year purchase money mortgage for $145,000 bearing interest at 10 percent. The property is located at 1110 Main Street in Bradley Beach and is designated on the tax map as lots 24 through 28 in Block 7. There were two attached buildings on the property. The front building on lot 24 measured approximately 50 feet by 90 feet and was built in the early 1930's. It consisted primarily of a showroom, with an office and other space on the first floor and two apartments on the second floor. Attached to the rear of the first building was a second building approximately 90 *617 feet by 145 feet, and 18 feet in height, which was constructed in 1949. It had been used for storing and servicing trucks. It had a thick concrete floor and a high roof supported by steel trusses. Lots 27 and 28, immediately behind this building, were used for parking vehicles. Lots 25 through 28 were placed in a residential zone, making the garage building a nonconforming use.
The fire occurred on November 23, 1980. The front building was completely destroyed. Three walls of the rear building remained, but there was testimony that there were cracks in the walls and several of the roof trusses were bent or warped. A real estate expert called by plaintiff assigned no value to the remaining portions of that building and valued the lots at $48,000 in the aggregate. A real estate expert called by defendants valued the front lot at $16,400 and valued lots 25 through 28 with the remaining portions of the damaged building at $177,000, making an aggregate value of $193,400. In his opinion, the non-residential use could be continued because he felt that less than one-half of the garage building had been destroyed.
Defendants operated a limousine service. After purchasing the property, repairs and renovations were made at a cost of $132,000 according to the testimony of one of the defendants. They operated the business out of this location from early 1980 until the time of the fire. The property was insured for $465,000. After the fire the damage claim was settled for $390,000. Of this amount, $145,000 was paid by the insurance company to plaintiff and defendants jointly because of their conflicting claims and interests under the policy. This sum was placed in a joint interest-bearing account pending the outcome of this litigation. Plaintiff commenced this action to claim its share as mortgagee, and defendants counterclaimed seeking an order that would permit the use of the proceeds in rebuilding the remaining damaged structure. Defendants continued to pay plaintiff the monthly mortgage installments of principal *618 and interest in the sum of $1,558.28. The balance due on the mortgage at the time of the fire was approximately $140,000.
In his oral opinion, the trial judge found that the fire substantially destroyed the buildings and greatly impaired the mortgagee's security. He rejected the value attributed by defendants' expert to the damaged structure that remained. However, he stated that the mortgagee was simply entitled to security for its mortgage debt and was not entitled to acceleration in payment of the full balance of its 15 year mortgage. In the trial judge's view, this was not a result which the parties "intended." He found that the mortgagee was entitled to security "now" and ought not be forced to become "a partner" in the construction process and disbursement of funds for restoring the property. Thus, he concluded that only the land should serve as security for a portion of the mortgage debt. Defendants' expert valued the land alone at $60,000. Choosing conservatively between the opinions of both experts, the trial judge found its value to be $50,000. He then ordered part of the retained proceeds to be used to reduce the balance of the mortgage loan to $50,000, with the mortgage continuing "as before."[1]
The mortgage note required the owners to keep the buildings insured "for the benefit of" plaintiff against damage or loss by fire or other hazards in amounts approved by plaintiff and to deliver the insurance policy to plaintiff. It also required the owners to keep the buildings and other structures in good repair and to make such repairs as required by plaintiff within 30 days of written notice. It provided for acceleration of the full obligation for default of these conditions. The mortgage provided that the mortgagors' failure to keep the buildings and improvements in good repair would constitute a default. It also called for insurance coverage and an assignment of the *619 policy and certificates to the mortgagee. The insurance policy provided for payment of the "loss" on the building items to plaintiff as mortgagee to the extent of its interest. In the course of the sale of the property the parties did not discuss how the insurance proceeds would be applied in case the buildings were damaged or destroyed. Nor was there any discussion concerning defendants' reconstruction rights in that event.
N.J.S.A. 17:36-5.20 prescribes certain standard provisions that must be included in a fire insurance policy issued in this state. Certain terms relate to a policy which makes the "loss ... payable, in whole or in part, to a designated mortgagee." The terms relate to cancellation of such a policy and to the right of the mortgagee to file a proof of loss. If the insurer denies liability to the mortgagor or owner, "it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery ... or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing."
Facially these provisions appear to contemplate that, unless otherwise provided, fire insurance proceeds will be paid to a mortgagee as his interest may appear. The parties made no contrary agreement. The provision in the mortgage note that the insurance shall be for the "benefit" of the mortgagee is consistent with the right of the mortgagee to receive the insurance proceeds to the extent of the balance due on the mortgage debt in the event a fire loss impairs the mortgagee's security. On the other hand, defendants contend that they should be able to use the fund in dispute in reconstructing the property. This would continue the mortgagee's security and would allow the mortgage to run its full term in accordance with the parties' bargain and expectations. A different result would encourage a mortgagee to commit arson, defendants say, in order to have the mortgage paid off early. But we need not speculate about motives for arson, since anyone who commits *620 arson runs the risk of criminal prosecution and the loss of insurance coverage. One could argue that an owner would have a greater motive to commit arson if the insurance proceeds are given to him for use in rebuilding an old building rather than to the mortgagee in payment of the mortgage debt.
It has long been the rule in New Jersey that the standard mortgagee clause "is an independent agreement between the insurer and the mortgagee." 495 Corp. v. N.J. Ins. Underwriting Ass'n, 86 N.J. 159, 163 (1981). See also Reed v. Firemen's Ins. Co., 81 N.J.L. 523, 526 (E. & A. 1910) (holding that an insurer's defenses against the mortgagor could not be asserted against the mortgagee); Luparelli v. United States Fire Ins. Co., 117 N.J.L. 342, 344-345 (Sup.Ct. 1936), aff'd on opinion below, 118 N.J.L. 565 (E. & A. 1937) (holding that the insurer was entitled to credit against the owner's claim in the amount paid to the mortgagee); Martin v. Franklin Fire Ins. Co., 38 N.J.L. 140, 142 (Sup.Ct. 1875) (referring to the clause in a policy making the loss payable to a mortgagee "a direction in advance as to the mode of payment" assented to by the insured). An insured's interest in property is fixed at the time of the loss. 495 Corp., supra, 86 N.J. at 163; P.R. DeBellis v. Lumbermen's Mut. Casualty Co., 77 N.J. 428, 435 (1978); Wolf v. Home Ins. Co., 100 N.J. Super. 27 (Law Div.), aff'd on opinion below 103 N.J. Super. 357 (App.Div. 1968). If we looked only to the time of the loss and not to subsequent events such as defendants' decision to rebuild the buildings, plaintiff would be entitled to payment of the full balance due on the mortgage.
The majority rule is reflected by the holding in Savarese v. Ohio Farmers' Ins. Co., 260 N.Y. 45, 182 N.E. 665 (Ct.App. 1932), the leading case on the subject. There a building which was insured for $7,500 was damaged by fire to the extent of $4,230. Plaintiffs held a mortgage on the property with a balance due of $6,500. The owner arranged to have the building restored to its previous condition and assigned his interest in the insurance proceeds to the contractors who made the *621 repairs. The mortgage required the mortgagor to keep the premises insured for the benefit of the mortgagee. The insurance policy contained the standard clause making the loss payable to the mortgagees as their interest may appear, regardless of any act or neglect of the owner. The mortgagees sued for the full amount of the loss, $4,230. The New York Appellate Division held that the mortgagees sustained no loss because at the time the action was commenced their security was unimpaired. The Court of Appeals reversed. The court reasoned that the mortgagee clause established independent insurance coverage for the mortgagee, as if a separate policy had been issued covering the mortgagee's interest. Thus, the court held that the mortgagee's right to the insurance proceeds depended only on the loss or damage to the insured property and was not dependent on the sufficiency or insufficiency of the mortgage security after the fire. The court noted that the mortgagor benefits by a reduction in the mortgage debt equal to the reduction in value of the building caused by the fire, so that the parties remain in the same relative position as before the fire. The court also noted that the insurance policy gave the insurer the option to repair, rebuild or replace the damaged property on giving a notice of intention to do so within 30 days after receipt of the proof of loss. N.J.S.A. 17:36-5.20 provides that fire insurance policies in this state must contain the same option. However, in Savarese, as in the case at hand, the insurance company did not choose to exercise that option. The absence of a similar option to be exercised by the owner suggests that the owner was not intended to have that right.
The holding in Savarese reflects the prevailing doctrine. First Nat'l Bank v. Martin, 289 Ill. App. 624, 7 N.E.2d 637 (Ill.Ct.App. 1937); Kintzel v. Wheatland Mutual Ins. Assoc., 203 N.W.2d 799 (Iowa 1973); Pink v. Smith, 281 Mich. 107, 274 N.W. 727 (1937); Fath v. Cape Girardeau, 132 S.W.2d 1073 (Mo. Ct. App. 1939); State ex rel Squire v. Royal Ins. Co., 58 Ohio App. 199, 16 N.E.2d 342 (Ct.App. 1938); Montgomery v. First Nat'l Bank, 265 Or. 55, 508 P.2d 428 (1973); Meader v. *622 Farmers' Mutual Relief Ass'n, 137 Or. 111, 1 P.2d 138 (Or. 1931); English v. Fischer, 660 S.W.2d 521 (Tex. 1983).
A minority of cases have upheld the right of the mortgagor to use the insurance proceeds to rebuild. Starkman v. Sigmond, 184 N.J. Super. 600 (Law Div. 1982), and cases cited therein, namely, Schoolcraft v. Ross, 81 Cal. App.3d 75, 146 Cal. Rptr. 57 (Dist.Ct.App. 1978); Fergus v. Wilmarth, 117 Ill. 542, 7 N.E. 508 (Sup.Ct. 1886); Cottman Co. v. Commonwealth Trust Co., 169 Md. 595, 182 A. 551 (Ct.App. 1936). In Schoolcraft, the insurance policy gave the homeowners an option to receive $8,250, representing the cash value of the house at the time it was destroyed by fire, or $14,100, if the house was rebuilt. The insurance company issued its check for $8,250, the balance to follow when the house was rebuilt. However, the beneficiary of the deed of trust (mortgagee) refused to release the funds for use in rebuilding. Instead, foreclosure proceedings were instituted and the homeowners lost everything. The mortgagee bought in at the foreclosure sale for $600 and later resold the property for $6,000. The court held that the mortgagee breached the implied covenant of good faith and fair dealing that was part of the deed of trust, and the mortgagee could not prevent the use of the "loaned funds" unless the security was impaired. The court stated that the security was not impaired. The house was totally destroyed; but the security would have been restored if it was rebuilt. Fergus v. Wilmarth presented a unique set of circumstances. In Fergus the court held that an owner, who rebuilt buildings destroyed by fire, was not entitled to a credit for the full amount of insurance proceeds against the debt on a note secured by a trust deed when the trustee held the money while the buildings were being reconstructed. The money was placed in a bank at the owner's request and the bank went into receivership. The court held that the owner would have to bear the loss. In passing it approved of the trustee's conduct in not paying the insurance proceeds to the creditor as long as the debtor was not in default. However, it is difficult to say what the prevailing *623 law is in Illinois, since the Appellate Court in First Nat'l Bank v. Martin, supra, held, according to a one paragraph abstract that did not cite Fergus, that an owner cannot compel the trustee under a trust deed to allow the owner the use of fire insurance proceeds for making repairs. We note also that the law of New York has been changed by statute enacted in 1965, N.Y. Real Property Law, § 254 (McKinney 1968). Under this law, if the mortgagor repairs or rebuilds the damaged property within three years after the fire, the mortgagee must pay over to the mortgagor a defined sum from the insurance proceeds received by the mortgagee, unless the mortgagee rejects the mortgagor's proof of the cost of the repairs.
In the absence of legislation or agreement of the parties giving the mortgagor the right to use fire insurance proceeds for repairing or rebuilding the damaged property, we hold that the mortgagee had the right to apply those proceeds to the outstanding debt. A holding that qualifies the rights of mortgagees according to the degree of impairment of the security runs contrary to the apparent intent of N.J.S.A. 17:36-5.20 and the agreement of the parties. In addition, it poses problems in application. Here, the trial judge found that the amount of the mortgage debt should be reduced to the value of the land that remained. But this is not what the mortgagee bargained for. Plaintiff bargained for land and buildings, whose value at the time of sale was $180,000, to serve as security for $145,000 of debt. Land worth $50,000 serving as security for $50,000 in debt is certainly not the equivalent. However, defendants contend that the solution found in Starkman v. Sigmond, supra, gives adequate protection to the mortgagee while allowing the owners to use the fund for rebuilding the property. In Sigmund, plaintiffs purchased a house from defendants for $150,000, with defendants taking back a five year purchase money mortgage for $60,000 with interest at 10% per annum. One month later a fire substantially destroyed the house on the property, resulting in insurance proceeds of $135,000. Of that sum, $60,000 was paid to the owners and mortgagees jointly *624 and the balance was paid to the owners. Both parties claimed the $60,000, the owners for use in building a new house on the property, and the mortgagees in payment of the mortgage. A real estate appraiser certified that the land was valued at $71,500. Thus, the trial judge concluded that the security for the mortgage was not impaired, and would be enhanced by the construction of a new building on the property. 184 N.J. Super. at 612. Accordingly, he found that the mortgagees suffered "no loss for which indemnification is required," id. at 613, and he ordered the money held until the owners began reconstruction "within a reasonable time," with the escrow funds to serve as "a construction mortgage" and progress payments to be disbursed "in accordance with the terms of the construction contract." Id. at 614.
We disapprove of the holding in Starkman v. Sigmond. There may be cases in which the mortgagee will be adequately protected by a holding that allows the mortgagor to use the fire insurance proceeds to rebuild. But there will be times when the mortgagee will be placed at risk by having his mortgage on an existing building converted to a construction mortgage for a new building. The holding creates too much potential for dispute and litigation. If the land in Starkman was worth only $15,000 and only $60,000 was held for use in reconstruction, the mortgagors would be certain of only $75,000 in security for its mortgage after the fire, while it had security worth $150,000 before the fire. The parties could dispute the value of the security after a fire, especially if the property is not insured at full market value. Disagreement could also arise as to the value of the repairs or the replacement structure, the amount of progress payments, and other matters. For example, in the case at hand a question was raised as to the right to reconstruct a nonconforming building. The trial judge said that the mortgagee should not be forced into partnership with the mortgagor in rebuilding the structure, and the mortgage loan should not be converted into a construction loan. We agree *625 with these observations. However, the solution he found left plaintiff less secure than it was before the fire.
We conclude that the mortgagee had the right to receive a portion of the insurance proceeds sufficient to satisfy the owners' debt. That is the purpose of the insurance provision in the fire insurance policy. Defendants did not have the right to use those proceeds to rebuild the damaged buildings. Nothing in the mortgage note, mortgage, or insurance policy gave them that right. They had an obligation under the mortgage to keep the mortgaged premises in good repair, and the failure to do so constituted a default. Where buildings are substantially damaged by fire, the mortgagee may consent to allow the insurance proceeds to be used for repairs or reconstruction. But he cannot be compelled to do so. He may elect to receive the insurance proceeds to the extent of the mortgage debt. That is his separate right under the insurance policy.
Defendants also contend that the trial judge erred in allowing plaintiff to receive interest on the $50,000 portion of the funds held in escrow, despite the fact that they continued to pay plaintiff principal and interest installments since the date of the fire. Under our holding, plaintiff was entitled to receive the amount due on its mortgage when the $145,000 of insurance proceeds were paid. From that date forward, plaintiff was entitled to receive that sum plus interest for withholding payment at the contractual rate of 10% per annum until judgment was entered in its favor. Since the judgment which was entered on May 19, 1982 should have been for the full balance of the mortgage debt, plaintiff was entitled to interest at 12%, see R. 4:42-11, from May 19, 1982 on the full debt, less adjustment for payments received since the fire.
We reverse the judgment below and enter judgment for plaintiff in accordance with this opinion. We remand the case to the trial court for the entry of an amended judgment consistent with our holding. We do not retain jurisdiction.
NOTES
[1] We note in passing the unlikelihood that a mortgage loan of $50,000 could be obtained in the open market with land valued at $50,000 as security.