582 A.2d 1050

CHARLES JONAX AND VIVIAN JONAX, PLAINTIFFS, v. ALLSTATE INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division (Civil)
Middlesex County

Decided October 2, 1990.

*Michael F. Chazkel* for plaintiffs.

*Edmund E. Lynch* for defendant (*Lynch & Lynch*, attorneys).

HAMLIN, J.S.C.

These are cross motions to settle the form of judgment and for new trial by plaintiff. Although denominated as motions to settle the form of judgment, they are motions to mold the verdict based upon the evidence and applicable law. *R.*4:42–1(c), *R.*4:50–1(e). The motion requires this court to resolve the open question as to the extent of the interest of an innocent spouse in the proceeds of a fire insurance claim based on a real property fire loss when she continues to cohabit with the guilty spouse. A review of the facts is necessary to an understanding of the issue.

Plaintiffs are husband and wife and under their previous name, Jones, took title on December 15, 1976 to a residential piece of property known as 9 Brookside Avenue, Old Bridge, New Jersey. The parties continued to reside there until October 29, 1982 when the premises were destroyed by fire. Allstate Insurance Company had issued a policy of insurance on the premises. That policy, *inter alia*, provided that:

> ... [the] company does insure ... the insured named in the declarations ... to the extent of the actual cash value of the property at the time of the loss ... nor in any event for more than the interest of the Insured....

The named insureds were Charles and Vivian Jonax who held title as tenants by the entireties.

The policy also contained a standard fraud disclaimer provision:

> This policy shall be void if, whether before or after the loss the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or subject thereof, or in any case of any fraud or false swearing by the insured relating thereto.

Plaintiffs had been experiencing some financial difficulties prior to the fire and had been trying unsuccessfully, to sell their home. The fire occurred in the early morning hours of October 29, 1982 when, by chance, none of the family members were at home except Charles Jonax who was seen running from the building shortly before or contemporaneously with the discovery of the fire. Plaintiffs immediately initiated a loss claim and received their first payment toward emergency living expenses of $750 on November 4, 1982. Because of the abrupt onset of the fire and its quick spread throughout the residence, arson was immediately suspected and there was an investigation by the Middlesex County Arson Task Force as well as by an expert retained by defendant. Suspicion quickly fastened on Charles Jonax. Thereafter, Allstate declined to compensate Charles Jonax for his interest in the property loss claim but did agree to pay Vivian Jonax for her property loss and living expenses. It should be noted that during this time Charles Jonax continued, as he does to the present, to reside with his wife.

On December 17, 1982, defendant paid $150 for board-up costs. On January 5, 1983, Allstate notified plaintiffs that, while it would pay Vivian Jonax to the extent of her interest in the loss, it would not honor any claim by Charles Jonax. Plaintiffs were already represented by public fire adjusters, Commonwealth Adjusting Company who were at the scene of the fire while the firemen were still fighting the blaze. Thereafter, Allstate received a claim by the mortgagee, The Lomas and Nettleton Company, as to its interest in the property, which was the joint obligation of both plaintiffs. That January 13, 1983 claim totalled $24,283.89. Both parties concede that was a correct balance owing on the full mortgage loan due from both plaintiffs. Allstate paid that claim directly to the mortgagee on

January 18, 1983. Subsequently, Allstate offered to pay Vivian Jonax $12,014.50 towards her half interest in the personal property contents loss and additional living expenses of $3,561.06 for herself and her children. That offer was conditioned upon her execution of a proof of loss under oath. She never executed the attached proof of loss. That proof of loss contained the usual fire loss claim averment:

> The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured of this affiant, to violate the conditions of the policy, or render it void; * * * and no attempt to deceive the said company as to the extent of said loss, lies in any manner made....

Charles Jonax never executed the proof of loss. Plaintiffs, thereafter, sold the premises in its damaged condition for $31,500, free of any mortgage obligation, which obligation had been satisfied by defendant.

Charles Jonax was indicted for arson by the Middlesex County Grand Jury. He finally went to trial on the criminal charge in 1987 and was acquitted. This civil action by both husband and wife came on for trial on April 23, 1990. Plaintiff offered only Vivian Jonax and Ronald Feigen as witnesses. Feigen had previously been employed by the public adjusting company in this matter, although the claim was handled by another employee who was not produced at trial. His testimony was merely to produce the claim records and explain them in general terms. Defendant produced seven witnesses including two arson experts. The case was submitted to the jury on April 27, 1990. After approximately 1 hour and 15 minutes of actual deliberation time, the jury determined that the actual cash value of the premises jointly owned by Charles and Vivian Jonax was $46,000. Such finding was consistent with plaintiffs' own realtors' appraisal which was in evidence by consent, and further found (applying civil standards of proof) that Charles Jonax did commit an act of fraud and misrepresentation as to the causation of this fire, thus barring any claim by him. These motions followed.

■ Plaintiffs' motion for new trial must be dismissed out of hand. The jury verdict was returned on April 27, 1990. The new trial motion was not filed until June 4, 1990, far past the ten-day requirement. *R.*4:49–1(b). That ten-day limit is one of the few time limit restrictions which may not be relaxed by the court even in the face of extenuating circumstances. *R.*1:3–4(c). *Moich v. Passaic Terminal,* 82 *N.J.Super.* 353, 197 *A.*2d 690 (App.Div.1964); *Baumann v. Marinaro,* 95 *N.J.* 380, 471 *A.*2d 395 (1984). Thus, the claims made, and relief sought, in that motion are summarily dismissed.

■ The more interesting issue arises on the motion to mold the verdict in regard to credit, if any, to be given to Allstate for their prior payment to the mortgagee. Allstate takes the position that since the policy is void as to Charles Jonax, Vivian Jonax is entitled only to her half interest in the real property of $23,000, and thus, having paid more than that to the mortgagee on her behalf they have no further liability to her. Plaintiffs take the position that a tenancy by the entirety does not create a divisible half share in one spouse, but rather each spouse is seized of the full entirety and so an innocent spouse may recover the full loss regardless of the fact that the guilty spouse with whom she lives would share in the proceeds of the policy. Citing *N.J.S.A.* 17:36–5.20 and *Ambassador Insurance Co. v. Montes,* 76 *N.J.* 477, 388 *A.*2d 603 (1978), plaintiff further argues that, since Allstate did not exercise their right to subrogation on the amount paid to the mortgagee, they have waived any right here to claim such payment as a credit on the judgment, and thus, Vivian Jonax is entitled to the full value of $46,000.

Those arguments are a tribute to imaginative, innovative and forceful advocacy. They are, of course, wrong in fact, logic and law. The first position urged by plaintiff on the issue of tenancy by the entireties may well be regarded as sophistry. The logic is easily tested by reversing its reasoning. If a spouse is seized of the full entirety the guilty spouse has the

same interest in the property and recovery under the terms of the policy would be barred as a result of his fraudulent act, and thus, an innocent spouse could never recover any portion of a fire-loss claim. That flies in the face of logic and existing law, *Howell v. Ohio Casualty Ins. Co.*, 130 *N.J.Super.* 350, 327 *A.*2d 240 (App.Div.1974). Of course, unlike *Howell* both spouses here survive and continue to cohabit. As to the subrogation claim, it is enough to note that subrogation may be an opportunity for a carrier to recoup its loss from a culpable third party. *Hartford Fire Ins. Co. v. Riefolo Construction Co.* 81 *N.J.* 514, 410 A.2d 658 (1980); *see also Commercial Union Ins. v. Bituminous Cas. Corp.*, 851 *F.*2d 98 (3rd Cir.1988). There is no reported case that has ever denied a carrier the right to claim previous payment as credit in a suit brought by its insured. To judicially sanction such interpretation would contradict common sense and well-recognized equitable principles.

One may test the proposition by examining its application to the facts of this case. Although Charles Jonax was residing with Vivian Jonax, and committed a fraudulent act in regard to the arson, his wife Vivian would be entitled to the $24,283.89 mortgage discharge, the $31,500 sale price of the property *and* the $46,000 verdict for a total of $101,783.89. This on an appraisal of their own real estate agent of $46,000.00. That is Alice going through the looking glass. This court chooses not to take that step.

Clearly, New Jersey has adopted the rule that an innocent spouse may not be barred from recovery under a fire-insurance policy claim where her spouse has committed the arson or been guilty of some fraud. *Howell v. Ohio, supra.* The facts of that case are enigmatic and the court there specifically avoided ruling as to real property interests. In the instant case, it could well be argued that the *Howell* rule should not apply to a surviving cohabiting married couple for policy reasons. Did not the guilty spouse benefit from the discharge of his obligation of the mortgage? Did not the guilty spouse benefit from selling the subject property clear of any indebtedness and presumably

share such proceeds with his wife? Would not any judgment recovered here be the joint property of both spouses subject to equitable distribution? To ask those questions demonstrates the fallacy of plaintiff's position. Based on the contract of insurance the husband has no interest in any recovery here. Conversely, the wife's recovery is limited to the extent of *her* interest. Can it be said that she alone is entitled to the full value of the damaged premises? If so, that will come as a great surprise to the matrimonial bar and would contradict equitable principles applied in a long string of cases interpreting matrimonial dissolution and equitable distribution. *N.J.S.A.* 2A:34–23, *Zappala v. Zappala,* 222 *N.J.Super.* 169, 536 *A.*2d 308 (App.Div.1988); *see also Coney v. Coney,* 207 *N.J.Super.* 63, 503 *A.*2d 912 (Ch. Div.1985).

The simple answer is that there is nothing in *Howell* nor any New Jersey case which precludes or prohibits a credit to Allstate of the payment to the mortgagee made in this case. To disallow or diminish such credit would, in effect, permit the guilty spouse to recover under the terms of policy that is void as to him.

In addition to the application of the facts to this case the general principle of credit for money paid a claimant has long been long recognized. *General G.M.C. Sales v. Passarella,* 195 *N.J.Super.* 614, 481 *A.*2d 307 (App.Div.1984). *See also United States of America v. Firemans Fund Ins. Co.,* 420 *F.*2d 337 (8 Cir.1970). There is nothing in this case that warrants the abandonment of that rule. Thus, this court holds that in the context of a real property fire-loss claim an innocent spouse may recover no more than half the value of the equity where she continues to remain married to a spouse who is barred from recovery by reason of his fraud upon the carrier.