668 A.2d 486

HOWARD SAVINGS BANK, PLAINTIFF, v. LIBERTY MUTUAL INSURANCE CO., DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided July 13, 1993.

Counsel for Plaintiff, HOWARD SAVINGS BANK: *Robert G. Mazeau*, Esq. (*Robert G. Mazeau* and *Kenneth Henkel*, Esq., appearing, *Kenneth Henkel*, Esq., on the brief).

Counsel for Defendant, LIBERTY MUTUAL INSURANCE CO.: *Wiener Lesniak*, Esqs., (*William L. Bracaglia*, Esq., appearing and on the brief).

GOLDMAN, J.S.C.

This matter initially came before me on cross-motions for summary judgment. In a brief oral opinion, I granted Liberty Mutual Insurance Co.'s (hereinafter "Liberty Mutual") motion. On motion for reconsideration by Howard Savings Bank (hereinafter "Howard"), I agreed to reconsider, but I now affirm my earlier ruling and grant Liberty Mutual's motion for summary judgment, dismissing Howard's Complaint.

Total Care Systems, Inc., and Total Linen Care, Inc., d/b/a Alpine Laundry, (hereinafter "TCS") owned and occupied 512 Hunter Street, Gloucester City, New Jersey where they operated a laundry business. Eastern National Bank held a mortgage that Howard later purchased. Howard made other secured loans to TCS.

Howard's loans required TCS to obtain an insurance policy protecting Howard against loss by fire or other casualty. TCS obtained such a policy from Liberty Mutual Insurance Company (hereinafter "Liberty Mutual"). The policy term was for three (3) years and ran from July 23, 1983 to July 23, 1986, naming Howard as first mortgagee in the standard mortgagee clause. On November 21, 1985, Liberty Mutual cancelled TCS's policy for non-payment of premiums and properly notified TCS. The cancelled policy was not renewed at the end of its original term on July 23, 1986. Liberty did not notify Howard of the November 21, 1985

cancellation[1] nor of the obvious non-renewal of the cancelled policy. Howard never asked about the renewal or its status. On February 27, 1987, fire destroyed the property. This lawsuit followed in which Howard claims that the property was insured by Liberty Mutual despite the policy cancellation on November 23, 1985 and the "non-renewal" on July 23, 1986.

Howard's claim is a simple syllogism. Howard argues that under the authority of *General G.M.C. Sales, Inc. v. Passarella*, 195 *N.J.Super.* 614, 481 *A.*2d 307 (App.Div.1984), Howard had an independent agreement with Liberty Mutual.[2] Howard claims that this "independent agreement" rendered Howard an "insured." Howard asserts that it was, as an "insured," entitled to all the statutory, regulatory and legal protection of an "insured." It points to *N.J.A.C.* 11:1–5.2(a)(3) which requires that an insurer give an "insured" notice of its intent not to renew a policy and *N.J.A.C.* 11:1–20.2(j) which provides that if the insurer "fails to deliver a [replacement] policy ... the insured shall be entitled to continue the existing policy...." Thus, Howard would be entitled to notice of Liberty Mutual's non-renewal.

Howard also argues that Liberty Mutual's failure lulled it into believing that a policy was still in effect and renewed at the end of its term. Howard maintains that since no notice of cancellation was given as required by *N.J.A.C.* 11:1–5.2(a)(2), it was not aware of the policy's status and thus reasonably assumed that the property was fully covered by a renewal policy.

Howard also relies upon *Bauman v. Royal Indem. Co.*, 36 *N.J.* 12, 174 *A.*2d 585 (1961) to support the notion that an insured has

---

[1] Actually Liberty Mutual contends that it probably notified Howard of the cancellation but admits that it has no proof thereof.

[2] For summary judgment purposes Liberty Mutual concedes that because it allegedly failed to have noticed Howard of the November 21, 1985 cancellation, coverage was afforded to Howard for the period from November 21, 1985 to July 23, 1986. Howard points out that for this period, Howard was concededly the only entity with coverage under the policy, hence the only "insured."

the right to assume that coverage has not been lessened. In *Bauman* the Court held that where an insurer simply sends what purports to be a renewal policy, absent specific notice of policy changes, the insured is entitled to assume that the coverage has not changed. Because it was not notified of the cancellation, Howard claims that it was entitled to assume renewal on the same terms.

On the other hand, Liberty Mutual states that the fire occurred long after the policy's expiration. Howard had seven (7) months to look into the coverage. Howard had actual knowledge of the policy's expiration date and was merely a mortgagee; therefore, the failure to provide notice of non-renewal did not violate Howard's rights.

Most importantly, Howard relies upon *Insurance Company of North America (INA) v. Rall*, 360 *Pa.Super.* 374, 520 *A.2d* 506 (1987), (hereinafter *"Rall "*) in which the court said in dicta [3] that an insurance carrier had an obligation to give a first mortgagee notice of non-renewal. In *Rall*, the plaintiff, INA, was a subrogee of the first mortgagee, First Federal Savings (First Federal). Farmers Fire Insurance (Farmers Insurance) insured the property. The Ralls paid the first two years of premiums (July 15, 1976 to July 15, 1978) but not the third (July 15, 1978 to July 15, 1979). A fire occurred in the fifth year on October 20, 1980. A bench trial resulted in a verdict for INA against Farmers Insurance, and the Pennsylvania court adopted an argument much like that fashioned here by Howard. Following *Guarantee Trust & Safe Dep. Co. v. Home Mut. Fire Ins. Co.*, 180 *Pa.Super.* 1, 117 *A.2d* 824 (1955), *Rall* held that the first mortgagee clause in the standard fire insurance policy formed a "separate, distinct and independent contract of insurance in favor of mortgagee." *Guarantee Trust, supra*, 117 *A.2d* at 825.

---

[3] This was *dicta* because the holding of the court was that INA had failed to prove the amount of the fire damage requiring dismissal of its complaint.

*Guarantee Trust* arose in the context of an insurer paying the full amount of a fire loss to an insured, ignoring the rights of the named mortgagee. *Accord, Evans Products Co. v. West American Insurance Co.*, 736 *F*.2d 920 (3d Cir.1984). Similarly, in *General G.M.C. Sales, Inc. v. Passarella, supra*, There the issue was whether the owners could compel the insurer to pay the fire insurance proceeds to them so that the property could be rebuilt over the objection of a mortgagee who wanted to use the proceeds to reduce the debt. The Appellate Division held that the mortgagee clause was a separate agreement between the mortgagee and the insurance company so that the insurance company could not fulfill its independent obligations to the mortgagee by delivering the policy proceeds to the insured-mortgagor.

■ The question presented here is not whether a mortgagee can be considered an "insured" for any purpose or for all purposes. The sole question here is whether a mortgagee is an "insured" under *N.J.A.C.* 11:1–5.2(a)(3).

■ In the absence of an authorizing statute and implementing administrative regulations, no notice of non-renewal or expiration is required to the insured or mortgagee. "[W]e are persuaded by reason and by substantial authority elsewhere that neither the insurer nor its agent has a legal duty to give notice of the expiration of a policy …" *Citta v. Camden Fire Insurance Assoc., Inc.*, 152 *N.J.Super.* 76, 78, 377 *A*.2d 779 (App.Div.1977).[4] "There appears to be general agreement that, absent statute or express policy provision, a mortgagee is not entitled to notice from the insurer that a fire insurance policy issued to the owner-mortgagor has expired." Annotation, *Right of Mortgagee to Notice by Insurer of Expiration of Fire Insurance Policy*, 60 *ALR*

---

[4] The Appellate Division cited cases from California, Colorado, Hawaii, Kansas, Massachusetts, Michigan, Missouri, New York, and Texas in support of this proposition.

3d 164, 166 (1979). Thus unless required by statute, regulation or express [5] policy provision, *no such notice is required.*

New Jersey law (*N.J.S.A.* 17:29C–1) permits regulations requiring notices to be served:

(1) to the insured, of the cancellation of any such policy; and (2) to any designated mortgagee not named therein as the insured of the cancellation of any interest in such policy; and (3) to the insured of interest not to renew any such policy.

*N.J.A.C.* 11:1–5.2 implements that statute requiring notice of cancellation to be delivered to both insured and mortgagee and notice of non-renewal to the insured. If the required notice is not delivered, then the policy will continue on the same terms as previously agreed upon in the initial policy. *N.J.A.C.* 11:1–20.2(j).

*N.J.A.C.* 11:1–5.2 reads as follows:

(A) All fire and casualty policies of insurance, except accident and health policies, shall provide for the issuing company to give:

1. Thirty days' written notice to the *insured* of the cancellation of any policy;

2. Thirty days' written notice of cancellation of any policy to any *mortgagee* mentioned in said policy; and

3. Thirty days' written notice to the *insured* of said company's intent not to renew any policy. [emphasis added]

■ The issue, then, is one of legislative and regulatory intent. Did the legislature intend to authorize and did the executive intend to set up a scheme mandating notice of non-renewal to mortgagees? The plain language of both the statute and the implementing regulations simply does not support a mortgagee's right to notice of non-renewal. Both the legislature and the Commissioner of Insurance knew how to distinguish between an "insured" and a "mortgagee" in providing for their respective rights in this context.[6] If a "mortgagee" were considered an

---

[5] There is no doubt about the right of a mortgagee to notice if the policy itself explicitly provides for such notice. *Zeiger v. Farmers' & Laborers' Cooperative Ins. Ass'n.*, 358 Mo. 353, 214 S.W.2d 426, 428 (1948).

[6] In contrast, the Pennsylvania regulation applicable in *Rall* only requires notice to the insured. Separate notice to a mortgagee of either cancellation or non-renewal is not mentioned. *Unfair Practices* 40 P.S. § 1171.5(a)(10).

"insured" for the purposes of this statute and regulation, there would be no need to distinguish between them. Section 2 could have been omitted as surplusage if "insured" and "mortgagee" were intended to have the same meaning in this context. Certainly there could have been a section "4" ("mortgagee") complementing section 3 ("insured"), just as section 2 complements section 1. But there is no such section, thus evidencing an intent not to give mortgagees the right to notice of non-renewal but only the right to notice of cancellation.

A mortgagee is entitled to notice of cancellation, as specifically stated in both the Administrative Code and its enabling statute, *N.J.S.A.* 17:29C–1. However, simply because a mortgagee is treated the same as an insured with respect to notice of cancellation, that does not necessarily warrant the same treatment in every other circumstance. The absence of a provision entitling a mortgagee to notice of non-renewal supports this claim. The protection Howard seeks is simply not found in the language of *N.J.A.C.* 11:1–5.2 nor *N.J.S.A.* 17:29C–1.

Moreover, the legislature's and the executive's policy choices make sense. When a policy is cancelled, the mortgagee has no way of protecting itself against a failure by its mortgagor to pay the premium. It has every reason to believe that insurance is still in effect. It may have initially insisted upon receipt of the policy and proof of payment of the first years' premium as a condition of the mortgage loan. In subsequent years premiums may be financed.

When renewals are contrasted with cancellations, as the Appellate Division said in *Citta, supra,* at 78, 377 *A.*2d 779, the insured is "charged with knowledge of the expiration date stated in the policy." This is even more true of a mortgagee.[7] The evils

---

[7] Mortgagees can insist upon escrows for insurance premiums so that the mortgagee is in actual control of the renewal. Mortgagees can also obtain policies on behalf of the borrower if the borrower fails to provide evidence of insurance coverage and add the cost to the mortgage debt.

intended to be dealt with by requiring notice of non-renewal (i.e., discriminatory practices, exploitation of consumer ignorance, and the extreme difficulties in obtaining fire insurance policies on short notice in urban areas) simply do not apply to sophisticated mortgagees. This provision is also intended to guard against the risk of miscommunication among carriers, brokers, agents, and insureds. *Echevarias v. Lopez,* 240 *N.J.Super.* 104, 108, 572 *A.*2d 671 (App.Div.1990). This risk is not applicable to a mortgagee.

It is also notable that *N.J.S.A.* 17:29C–1 was enacted at the same time as *N.J.S.A.* 17:37A–1. That law implemented many of the recommendations of the President's Advisory Panel on Insurance in Riot–Affected Areas to provide a mechanism by which properties that were structurally sound but located in riot torn areas could obtain insurance even if the private market would not provide coverage voluntarily. As then Governor Hughes explained in a statement accompanying his signing these bills into law, *N.J.S.A.* 17:29C–1 helped alleviate a problem:

> By increasing the former 5 day notice of cancellation period to 30 days, as was done by the Commissioner upon the signing of A933 [*N.J.S.A.* 17:26–1], we have provided the property owner with a breathing period during which he will in many cases be able to obtain substitute insurance without suffering an unprotected hiatus. Hopefully he will be able to obtain this from another carrier—but should he be unable to do so, he will be aided by the benefits of S712 [*N.J.S.A.* 17:37A–1], provided his property ought to be entitled to insurance by virtue of its sound condition. *Governor Hughes Statement Accompanying A933, A939, and S712.*

Finally, in balancing the respective interests, providing notices of non-renewal to multiple mortgagees would be unduly cumbersome to an insurer and would impose a cost ultimately passed on to the consumer. Record-keeping under such conditions would also be cumbersome. While the "availability of computer technology ... [may] limit the burden of a notice of expiration requirement, ... there is a cost factor involved which must otherwise be borne by all policyholders." *Barbara Corp. v. Bob Maneely Ins. Agency,* 197 *N.J.Super.* 339, 348, 484 *A.*2d 1292 (App.Div.1984) (Judge Simpson, dissenting). Howard, for example, argues that because it never received notice of non-renewal it would have been entitled to assume that the property insurance was renewed

forever. Presumably, the same argument would apply if the fire had occurred twenty (20) years after the original expiration rather than seven (7) months later as here. The potential burden would be heightened if Howard were merely one of multiple mortgagees. The requirement of providing notice of non-renewal to all mortgagees (particularly after the insured's policy has been cancelled) could be unduly burdensome and expensive. If "renewals" were automatically provided under the circumstances here covering the mortgagee's interests only, mortgagees would have no incentive to contact their borrowers and thus encourage the purchase of insurance sufficient to cover the interest of the borrower as well.

In conclusion, Howard knew of the expiration date of the insurance policy. That should have been enough notice to induce Howard either to investigate reinstatement of the policy or to initiate the search for a new one. Howard cannot justify seven (7) months of inaction after the policy's expiration by pointing to a failure to serve notice of cancellation or by arguing that such a failure should elevate Howard to the rights of an insured under this regulation. Howard is only entitled to those rights guaranteed by contract and in explicit legislative or regulatory language. Additional rights should not be implied when intentionally left out.[8]

Howard was not entitled to notice of non-renewal and I therefore grant Liberty Mutual's motion for summary judgment.

---

[8] Obviously, if there is no duty there can be no tort claim. Any loss was caused by the failure to have a renewal policy. There is no causal connection between this loss and the failure to notify Howard of the original cancellation.