CENTRAL TRUST COMPANY, trustee, &c.,

*v.*

CENTRAL FREEZING COMPANY OF ATLANTIC CITY et al.

[Decided November 15th, 1915.]

1. Complainant was the trustee named in a purchase-money mortgage upon the plant of defendant company amounting to $175,000, $15,000 of which was payable by three notes of $5,000, endorsed by the defendant's promoters, the balance of $160,000 in twenty years represented by bonds secured by the mortgage; the plant then being subject to three mortgages, two of which matured May 1st, 1914, and all of which the mortgagee was to pay before the bonds were to be delivered by the mortgagor. At the time of the mortgage the bonds had not been prepared, and a draft of one of them was inserted and a temporary bond of $175,000 was substituted, and the bonds were to be delivered to the trustee on January 1st, 1914, and on default of interest, &c., the principal sum was to become due. The mortgagor failed to deliver the bonds to redeem the temporary bond and defaulted.—*Held*, that the mortgagor was not excused from delivering such bonds by the mortgagee's failure to pay off the two subsequently maturing mortgages, which it was ready to do on the delivery of the bonds, and that the mortgagee was entitled to a foreclosure.

2. On such foreclosure, and the ordering of a sale to make the principal of the mortgage with accrued interest, &c., the amount of $160,175 was to be paid to the mortgagee, first deducting therefrom and paying the mortgages encumbering the property at the time of purchase, and which the mortgagee was obligated to pay; and $15,175, representing $15,000 of the bonds secured by the mortgage which were to be issued to the mortgagor's promoters, was to be paid to the mortgagee to be applied to the payment of the notes of the mortgagor endorsed by the promoters in part payment of the purchase price.

*Messrs. Stackhouse & Kramer,* for the complainant.

*Mr. John F. Harned* and *Mr. James S. Gradwell,* for the defendants.

BACKES, V. C.

At the conclusion of the hearing of this case, June 28th, 1915, it was announced that a decree would be awarded to the com-

plainant for the full amount of its claim. Reasons therefor were given sufficient, for the time being, to enable counsel to formulate the decree. An appeal has been taken, and a request has been made for a fuller statement of views, as was intimated, would be done if the cause were to be reviewed.

The bill was filed by the Central Trust Company, trustee (February 2d, 1915), to foreclose a purchase-money mortgage given by the Central Freezing Company of Atlantic City, for $175,000, upon its plant in that city. The mortgage to the trust company covered real and personal property. Through inadvertence, it was not recorded as a chattel mortgage. Judgment creditors of the freezing company levied upon and subsequently sold all of the personal property which went to make up the ice-freezing plant as it stood when the freezing company purchased it. The pledge has, consequently, greatly diminished in value.

In 1912, the Center Freze Realty Company, then the owner of the plant, sold and conveyed it to the freezing company for $175,000, free of encumbrance. Fifteen thousand dollars was agreed to be paid by three promissory notes of $5,000 each, payable within one year, to be endorsed by the promoters of the freezing company, Messrs. Serrill, Turner & Gradwell. The balance was to be paid in twenty years, represented by $160,000 of bonds of the denomination of $500 each, to be secured by the mortgage under foreclosure. The plant, when conveyed, was subject to mortgages of $60,000, of which two, amounting to $35,000, matured in May of 1914. The third mortgage of $25,-000 was payable in August, 1915. It was agreed that the realty company should pay off these mortgages as they matured, and for the securing of this, the freezing company's bonds were to be held by the trust company and not to be delivered to the realty company until the latter canceled the mortgages.

At the time the mortgage under foreclosure, which bears date January 1st, 1913, was executed, the bonds, which it was to secure, had not been prepared, and, as an expedient, a draft of one of them was inserted in the mortgage and a temporary bond of $175,000 was substituted; the arrangement being that the bonds were to be delivered to the trust company on or before January

1st, 1914. Interest on the bonds was payable in January and July, and, upon default in the payment of interest, insurance or taxes, for sixty days, the principal sum was to become due and payable. The interest on the bonds, less $600, was paid to January 1st, 1914. The freezing company admits defaults in the payment of interest after that time. The freezing company also failed to deliver to the trust company its bonds to redeem the temporary bond, which it was to do by January 1st, 1914, and sets up, to evade the effect of both shortcomings, that the realty company failed and refused, in May of 1914, to pay off the two mortgages of $35,000, which then matured. The freezing company was manifestly not excused from delivering the bonds on or before January 1st, 1914, according to agreement, because up to that time the realty company had done all it was required to do, and was anticipating the performance of its contract to pay the mortgages, which were to fall due in May then next. Apparently, the only reason advanced for the non-delivery of the bonds is that given by Mr. Gradwell, who seems to be the spokesman of the freezing company, that the trust company never offered to surrender the temporary bond. This is too feeble to discuss. The reason for the failure and refusal to pay interest after January 1st, 1914, is also without merit. The realty company, through its president, Mr. Hurley, had purchased from the owners the two mortgages, and had deposited them with the trust company, ready for cancellation, whenever the freezing company delivered its bonds to the trust company. This the freezing company's officers knew, for they had been repeatedly called upon to make delivery. The mortgages are still with the trust company, available for the execution of the contract. The failure of the realty company to cancel the mortgages is not open to criticism. Now, in this posture, was not the realty company entitled to the benefit of the trust mortgage? The delivery of the freezing company's bonds to the trust company was not essential to the right of recovery, and the unwarranted refusal to comply with the contract in this respect did not deprive the realty company of its beneficial and equitable ownership in the debt represented by the mortgage, to the extent of $160,000.

Default having been admitted, a decreè was ordered directing a sale of the premises, to make the principal of the mortgage, with accrued interest, accumulated insurance premiums, &c., with costs, and out of this sum, after deducting costs, one hundred and sixty one hundred and seventy-fifths was to be paid to the realty company, first deducting therefrom and paying the mortgages of $60,000 which the realty company was obligated to cancel. Fifteen one hundred and seventy-fifths, representing $15,000 of the bonds secured by the mortgage, which were to be issued to the three promoters, was ordered to be paid to the realty company, to be applied to the payment of the three notes given by the freezing company, endorsed by them, in part payment of the consideration price. These bonds were to be, or were, in fact, issued to these endorsers by the freezing company, as collateral security for the payment of the notes, and to save them harmless from loss, by reason of their endorsements. The three notes were endorsed over to and discounted by the present holder, for the realty company, and not being paid at maturity, it received notice of the dishonor. The security held by the promoter-endorsers enured to the benefit of the realty company, and entitles it to the proceeds of the mortgage, to the extent and to be applied as indicated.

I observe, now, although counsel has not called my attention to it, that out of the proceeds of sale the complainant should be first reimbursed for the moneys advanced for the payment of insurance premiums and taxes, and that thereafter the distribution should be in the proportions above mentioned, but as this is not harmful to the appellant, freezing company, I assume it is not complaining.