674 A.2d 1032

RESOLUTION TRUST CORPORATION AS CONSERVATOR OF CO-
LONIAL SAVINGS AND LOAN ASSOCIATION, PLAINTIFF, v.
CRAIG J. GRIFFIN AND SHARON R. GRIFFIN, HIS WIFE;
PROVIDENT SAVINGS BANK; GARDEN STATE BANK; CEN-
TRAL JERSEY BANK AND TRUST COMPANY; DAMIEN
SEUNG C. CHO, M.D., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Monmouth County

Decided June 29, 1994.

*Juan C. Perez* for plaintiff (*Shapiro & Kreisman*, attorneys).

*Nicholas J. Purcell*, for defendant Provident Savings Bank (*Stern, Lavinthal, Norgaard & Daly*, attorneys).

McGANN, J.S.C.

Plaintiff seeks reimbursement from surplus funds, for payments of taxes and insurance premiums which it made after entry of final judgment of foreclosure but before the Sheriff's sale. That motion raises narrow but interesting questions not previously addressed in reported cases.

Final judgment in foreclosure was entered on September 28, 1992, through the Foreclosure Unit in the Superior Court Clerk's Office. Defaults had been entered against the property owners-mortgagors (Mr. and Mrs. Griffin), Garden State Bank and Dr. Cho. Notice of the application for final judgment was given to defendants Provident Savings Bank and Central Jersey Bank and Trust Company. Provident Savings Bank responded with its affidavit of amount due on its second mortgage. The judgment (based upon filed affidavits of proof) provided:

> that "the Plaintiff is entitled to have the sum of $104,862.25 together with lawful interest thereon to be computed from August 16, 1992 together with costs of this suit to be taxed, including a counsel fee of $1,198.62 raised and paid out of the mortgaged premises....

> And ... that the defendant Provident Savings Bank is entitled to have the sum of $60,613.58 together with lawful interest from September 1, 1992 raised and paid out of the mortgaged premises in the second place, with costs of this suit to be taxed."

In the usual fashion, the judgment directed that the property be sold to satisfy those liquidated amounts due to plaintiff and to Provident Savings Bank, and that the Clerk issue a writ of execution to the Sheriff of Monmouth County commanding the Sheriff to make the sale, pay from the proceeds the amounts due

plaintiff and Provident Savings Bank (in that order), and deposit any surplus funds with the Clerk of the Court.

Plaintiff's costs were taxed at $1,800. The writ of execution issued on September 28, 1992. It recited the sums due to plaintiff and Provident Savings Bank as set forth in the judgment.

Because of the then-existing backlog of foreclosure sales in the Sheriff's office, this sale was not scheduled until July 19, 1993. At the request of the Griffins it was adjourned to August 16, 1993, and then to September 13, 1993. Thereafter, plaintiff, the Resolution Trust Corporation (RTC) had the sale adjourned to November 1, 1993, and again to December 6, 1993. The sale was finally held on January 24, 1994.

Subsequent to the entry of final judgment the RTC paid local real estate taxes on the property as follows:

| $1,170.17 | on October 27, 1992 |
|---|---|
| 905.26 | on January 4, 1993 |
| 905.26 | on April 5, 1993 |
| 1,064.45 | on August 19, 1993 |
| 1,064.45 | on September 27, 1993 |
| 984.86 | on January 10, 1994 |
| $6,094.42 | |

In addition, on January 15, 1993, it paid the $1,011.00 annual premium on fire and liability insurance coverage for the premises. The right to make both payments was contained in the mortgage.

As the Sheriff's records reveal, the successful bidder at the sale of January 24, 1994, was Craig J. Griffin, based on his bid of $145,235.46 (inclusive of Sheriff's fees of $4,235.46). That sum was paid to the Sheriff and Griffin received the deed. After deduction of his fees the Sheriff, pursuant to the writ of execution, disbursed $115,997.96 (including legal interest) to the RTC and forwarded a check for the balance of $25,224.08 as surplus to the Clerk of the Superior Court, together with his report of sale.

On March 25, 1994, counsel for RTC filed a notice of motion "for additional relief to Plaintiff after judgment." It sought entry of an order, "Directing the Sheriff or the Clerk of the Superior

Court, Surplus Funds, to pay to the plaintiff the following amounts in addition to the amount directed to be paid after the execution of the Affidavit of Proof, to wit:" (there follows a listing of the amounts set forth above). Service of the notice of motion was effected on all of the originally named defendants, including the Griffins and Provident Savings Bank. Through counsel the bank filed a brief in opposition to the motion. That led to an exchange of additional letter memoranda by counsel and oral argument on June 24, 1994.

A final judgment in foreclosure is binding upon all parties to the action. Insofar as plaintiff is concerned, the judgment establishes its mortgage as the primary lien on the property; fixes the amount owed to plaintiff as of a specific date; awards interest thereafter "at the legal rate"; allows specific costs; orders sale of the property; and gives direction to the sheriff as to payment of monies generated at the sale. The judgment may, if proper proofs are submitted by junior lienholders, specify their priority and fix the amounts due. If entered through the Foreclosure Unit, no direction or determination is ordinarily made regarding priority of junior liens. Instead, the Sheriff, as directed by the writ, turns over the surplus after payment of the first lien, thereby necessitating an application for payment of surplus funds by one or more of the junior lienholders on motion to the court and, at that time, judicial resolution of any disputes over priority of competing lien claims.

One of the legal consequences of the final judgment is that the mortgage itself no longer has legal vitality. That concept is expressed by the statement that it has "merged" into the final judgment. What had been a private claim under the mortgage contract becomes a special form of judgment entitling the plaintiff to a writ of execution to sell the designated property to satisfy the amount determined to be due. *Colonial B–L Assoc. v. Mongiello Brothers, Inc.*, 120 *N.J.Eq.* 270, 276, 184 *A.* 635 (Ch.1936). The effect of the merger becomes clear when it is realized that interest on the adjudicated debt no longer runs at the rate set in the note

and mortgage, but rather runs on the judgment amount at the rate set forth in *R.*4:42–11.

Up to a point, a court does have control over its own judgments and on duly served notice, may amend the judgment if deemed right and equitable, provided there is no adverse effect on intervening rights of other parties. *R.*4:50–1(f). It is not unusual in a foreclosure action that a foreclosing bank may discover, after entry of final judgment but before the sheriff's sale is advertised, that additional real estate taxes and, perhaps, insurance premiums, have been advanced by it and not set forth in the affidavit of proof upon which the final judgment has been entered. A motion, at that point, to amend the judgment and writ is rarely, if ever, opposed; the relief is granted; the amount due in both the judgment and writ is ordered amended and the sale then proceeds under the amended writ. *See* 30 *New Jersey Practice Law of Mortgages* § 381 at 335. Similar relief can be granted if the sale has already been advertised. Since the sale would have to be readvertised, the plaintiff would have to bear the expense of the Sheriff's costs associated with both the original and amended advertising.

However, once the sale takes place, the Sheriff must comply with the terms of the writ in disbursing the money received. The Sheriff deducts his fees from the amount bid; pays the plaintiff the amount found due in the final judgment, with interest at the legal rate, and turns the balance [1] over to the Clerk as surplus funds to be deposited to await the claims of junior lien holders to those funds. The plaintiff is entitled to no more than that from the proceeds of sale; the junior lien holders (and after them, the former owner-mortgagor) are entitled to the surplus according to their priorities. 30 *New Jersey Practice Law of Mortgages* § 382 at 336.

---

[1] In this case, because the balance left after payment of the first lien was not sufficient to pay the second lien in full, as ordered in the writ, the Sheriff elected to deposit the balance with the Clerk.

Here, one department of the RTC simply continued to pay taxes and the insurance premium after entry of final judgment because it was not advised by the foreclosure branch to cease doing so. There was no compulsion to pay those items. No tax sale certificate had been created by the municipality. Any purchaser at a sheriff's sale necessarily takes subject to the paramount lien of unpaid municipal taxes.

There was likewise no compulsion to pay insurance premiums. If the RTC believed it worthwhile to do so to protect against loss before sale, it had the right to do so, but it was then acting in its own self-interest. In doing so, however, it is not entitled to reimbursement at the expense of the second lien holder, Provident Savings Bank. Even with the turnover of the surplus on deposit, Provident will be left with a substantial loss on its loan. Should plaintiff's motion be granted, Provident will lose $7,105.44 more.

Plaintiff received what it asked for in applying for the final judgment and writ of execution. It has only itself to blame if it is out of pocket. It urges that the court grant the motion and argues that *Central Trust Co. v. Central Freezing Co.*, 85 *N.J.Eq.* 363, 96 *A.* 63 (Ch.1915), supports that result. It does not. That case dealt with complex problems of equitable subrogation and priority of payments from the sum generated at the foreclosure sale. As an off-hand comment and by way of an issue raised in the case, the vice-chancellor wrote:

> I observe, now, although counsel has not called my attention to it, that out of the proceeds of the sale the complainant should be first reimbursed for the moneys advanced for the payment of insurance premiums and taxes, and that thereafter the distribution should be in the proportions above mentioned, but as this is not harmful to the appellant, freezing company, I assume it is not complaining.
>
> [*Id.* at 366, 96 *A.* 63.]

Therefore, this court rules that the RTC is not entitled to reimbursement from surplus funds. Those monies are for the benefit of others. This ruling does not leave the RTC without a remedy. The Griffins held title to the property before the sale; they continued to hold it after the sale. It has been, and is, theirs—and the taxes on it have been, and continue to be, their

responsibility. They are not entitled to the windfall of $6,094.42 (plus interest) in taxes paid for their benefit by the RTC or the windfall of $1,011 insurance premium (plus interest) paid to protect their interest, as well as for the protection of the RTC. To that extent, they have been unjustly enriched. RTC may maintain an action in equity against the Griffins for reimbursement of those sums and seek the imposition of an equitable lien on the property to secure payment.