690 A.2d 1040

VIRGINIA BEACH FEDERAL, PLAINTIFF–APPELLANT, v. THE BANK OF NEW YORK/NATIONAL COMMUNITY DIVISION, DEFENDANT–RESPONDENT, AND THOMAS J. JONES AND DIANE B. JONES, HIS WIFE; ANDREW MOYLE, T/A COTT BEVERAGE OF SOUTH JERSEY; ANITA CAMPANA; RESOLUTION TRUST CORPORATION AS RECEIVER FOR COLUMBIA SAVINGS BANK; KEVIN HENDERSON; CARMEN PEREZ; MERCURY ELECTRIC PRODUCTS MANUFACTURING CORPORATIONS; STATE OF NEW JERSEY; CHEMICAL BANK NEW JERSEY; CAMDEN COUNTY BOARD OF SOCIAL SERVICES; MARTLAND HOSPITAL N/K/A UMDNJ; DR. JOHN C. PELLOSIE; THE HERTZ CORPORATION; AGWAY PETROLEUM CORP. D/B/A CLARKSBORO AGWAY; W. HARGROVE ROOFING COMPANY; HOSPITAL & DOCTORS SERVICE BUREAU; FIRST FIDELITY BANK; COUNTY OF CAMDEN; ESSEX COUNTY; ELMA HALL; MABEL VICTOR; AND ROBIN REDDICK, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted February 11, 1997—Decided March 17, 1997.

Before Judges MICHELS, KLEINER, and COBURN.

*Shapiro & Kreisman,* attorneys for appellant (*Kristina G. Murtha,* on the brief).

*Saiber Schlesinger Satz & Goldstein,* attorneys for respondent (*Susan A. Degli—Antoni,* on the brief).

COBURN, J.S.C. (temporarily assigned).

In this mortgage foreclosure action, plaintiff Virginia Beach Federal ("VBF"), the first mortgagee, and defendant The Bank of New York ("BNY"), the second mortgagee, claim the legal right to surplus funds generated at the sheriff's sale of the mortgaged

property. VBF seeks reimbursement from the surplus funds for payment of real estate taxes, insurance premiums, and property inspection costs incurred after the entry of the final judgment of foreclosure but before the sheriff's sale. BNY was the successful bidder at the sheriff's sale, and it claims entitlement to the surplus to reduce its losses because the alleged costs of VBF were not included or referenced in the judgment of foreclosure and because BNY purchased the property without knowledge that such costs existed. Following the sale, the sheriff deposited the surplus funds with the clerk of the court. VBF moved for an order directing the clerk to pay the surplus to it. The Chancery Division judge denied VBF's motion. VBF appeals, and we affirm.

In January 1977, defendants Thomas J. and Diane B. Jones mortgaged their home on Otterhole Road, West Milford, New Jersey. In 1984 the mortgage was assigned to VBF. A subsequent loan resulted in the second mortgage on this property held by BNY. The Jones's defaulted and plaintiff VBF instituted foreclosure proceedings. The final judgment of foreclosure and the writ of execution were issued on September 13, 1995. At the January 2, 1996, sheriff's sale, held pursuant to the writ of execution, BNY was the successful bidder with an offer of $25,150. There is no indication of the identity of any other bidders. After payment of the first mortgagee's judgment and the sheriff's incidental expenses, the sale yielded a surplus of $4,099.90, which the sheriff deposited with the clerk of the Superior Court.

On March 27, 1996, plaintiff VBF filed its unsuccessful motion seeking reimbursement from the deposited surplus funds for the following items of expense, totaling $3,865.75, which it had voluntarily incurred after obtaining the judgment of foreclosure and before the sheriff's sale: $2,690.25 for real estate taxes, $1,132.00 for insurance premiums on the property, and $43.30 for property inspection. Neither the judgment of foreclosure nor the writ of execution made mention of these expenses. Nor were they other-

wise brought to the attention of the sheriff or the bidders at the time of the sale.

Petitions for surplus moneys in foreclosure actions are governed by *N.J.S.A.* 2A:50–37 and *R.* 4:64–3. The statute provides, in pertinent part:

> The moneys arising from a sale pursuant to this section *shall be applied to pay off and discharge the moneys ordered to be paid*, and the surplus, if any, shall be deposited with the court and the same shall be paid to the person or persons entitled thereto, upon application therefore, as the court shall determine.
>
> [emphasis added.]

The rule provides, in pertinent part:

> Petitions for surplus moneys in foreclosure actions may be presented at any time after the sale and may be heard by the court on motion and *notice to all defendants whose claims are not directed in the execution to be paid out of the proceeds of sale* including defaulting defendants.
>
> [emphasis added.]

■ VBF relies on the absence from the statute and the rule of any express statement prohibiting the award of surplus funds to the foreclosing mortgagee. Therefore, it contends the matter rests in the sound discretion of the court. BNY argues that the portions of the statute and rule emphasized above demonstrate implicitly that a foreclosing mortgagee has no standing to seek surplus funds because under the statute the foreclosing mortgagee is only entitled to the "monies ordered to be paid" and because under the rule only defendants are entitled to notice of the motion for surplus moneys.

BNY further contends that its construction of the statute and rule accord with the basic doctrine that upon foreclosure the mortgage merges into the final judgment of foreclosure and "every party ... has the right to assume that such decree represents the final determination of the debt...." *Colonial B.-L. Ass'n v. Mongiello Bros., Inc.,* 120 *N.J.Eq.* 270, 276, 184 *A.* 635 (Ch.1936).

In response to the merger argument, VBF cites 29 Cunningham and Tischler, *N.J. Practice,* Law of Mortgages § 151, at 698 (1975) and 30 Cunningham & Tischler, *New Jersey Practice,* Law of

Mortgages § 338, at 268 (1975) for the proposition that the doctrine of merger is flexible and courts will consider the circumstances in deciding whether a particular claim of merger accords with equity and justice. However, we note in passing that the merger discussions to which VBF refers are utterly unrelated to the circumstances of this case and to the question of how surplus funds are to be distributed.

The issue appears to have arisen on only three occasions in the reported decisions of this State. *Central Trust Co. v. Central Freezing Co.*, 85 *N.J. Eq.* 363, 96 *A.* 63 (Ch.1915), *aff'd o.b.*, 86 *N.J. Eq.* 243, 98 *A.* 1085 (E. & A.1916); *Resolution Trust Corp. v. Griffin*, 290 *N.J.Super.* 88, 674 *A.*2d 1032 (Ch.Div.1994); *National Mortg. Co. v. Syriaque*, 293 *N.J.Super.* 547, 681 *A.*2d 1232 (Ch. Div.1994).

In *Central Trust Co., supra*, the dispute concerned difficult problems of equitable subrogation and the priority of payments from the moneys resulting from a foreclosure sale. After resolving the issues presented by the parties, the vice-chancellor said this by way of *dictum:*

> I observe, now, although counsel has not called my attention to it, that out of the proceeds of sale the complainant should be first reimbursed for the moneys advanced for the payment of insurance premiums and taxes, and that thereafter the distribution should be in the proportions above mentioned, but as this is not harmful to the appellant, freezing company, I assume it is not complaining.
>
> [85 *N.J. Eq.* at 366, 96 *A.* 63.]

While, as indicated, the case was affirmed by the Court of Errors and Appeals on the opinion below, there is nothing to suggest that the parties were litigating before that Court with respect to the vice-chancellor's *dictum.* Consequently, we do not consider the vice-chancellor's observation as binding on us.

In *Resolution Trust Corp., supra*, the court was confronted with the same circumstances as we face here. The court held that under the doctrine of merger plaintiff first mortgagee was entitled to nothing other than the amount found due in the final judgment of foreclosure with any surplus from the sale to be distributed first to the junior lien holders according to their priorities and then to

the mortgagor. *Resolution Trust Corp., supra,* 290 *N.J.Super.* at 92, 674 *A.*2d 1032. The court further noted that a first mortgagee who chose to make payments after the judgment of foreclosure for real estate taxes or insurance could insure recovery of those expenses from the sheriff's sale by moving to amend the judgment prior to the sale. *Id.* at 92, 674 *A.*2d 1032. Noting that the payments in question were voluntary and served only the interests of the plaintiff, the court said that in making such payments plaintiff did not become:

> entitled to reimbursement at the expense of the second lien holder, Provident Savings Bank. Even with the turnover of the surplus on deposit, Provident will be left with a substantial loss on its loan. Should plaintiff's motion be granted, Provident will lose $7,105.44 more.
>
> Plaintiff received what it asked for in applying for the final judgment and writ of execution. It has only itself to blame if it is out of pocket.
>
> [*Id.* at 93, 674 *A.*2d 1032.]

VBF contends that the approach taken by *Resolution Trust Corp.* is contrary to the policy that a foreclosing mortgagee has an obligation to preserve the mortgaged security. *New York and Suburban Fed. Sav. and Loan Ass'n v. Sanderman,* 162 *N.J.Super.* 216, 392 *A.*2d 635 (Ch.Div.1978). The difficulty with that position is that payment of real estate taxes and insurance does nothing to preserve the mortgaged security; such payments simply protect the interests of the mortgagee. The mortgagee can only insure itself to the extent of its insurable interest, *Resolution Trust, supra,* 290 *N.J.Super.* at 93, 674 *A.*2d 1032, and the failure to pay taxes will simply result in the purchaser taking subject thereto. *Id.* at 92, 674 *A.*2d 1032.

VBF further argues that the consequence of *Resolution Trust Corp.* is a receipt by the successful bidder of an inappropriate windfall since had the taxes not been paid by plaintiff they would have become BNY's liability. However, in our view that perceived inequity must be balanced against BNY's right to assume in making its bids that the only outstanding obligations are those set forth in the judgment plus whatever taxes may be due as a matter of record.

*National Mortg. Co., supra,* also involved the appropriate disposition of surplus funds in a somewhat similar but distinguishable situation. The court first took note of *R.* 4:64–3's mandate that a petitioner seeking surplus funds is only required to give notice to all defendants, but felt that it could relax the clear implications of that rule by reference to *R.* 1:1–2. Finding the *dictum* in *Central Trust Co., supra,* to be persuasive, the court said:

> For a court not to permit a mortgagee to be reimbursed for the expenditures made for the benefit of the foreclosed property, would discourage upkeep of the property. A court should not explicitly permit or tacitly allow property in foreclosure to fall into ruin. Preservation of the premises should not be discouraged by the courts. If a court refused to allow a mortgagee to be reimbursed for monies utilized for the benefit of the property, the court would be implicitly eradicating any incentive or inclination a mortgagee may have to preserve the property. From a practical standpoint, property that has been maintained may result in a higher bid at the foreclosure sale and, therefore, preservation of the property by the first mortgagee is advantageous to all the parties concerned.
>
> [293 *N.J.Super.* at 555, 681 *A.*2d 1232.]

The difficulty with the above analysis is that payments of real estate taxes and insurance, as we have noted, do not have the effect of preserving the property for others. Furthermore, the actual holding of this case is far narrower than plaintiff VBF suggests. The court said:

> This case is not to be interpreted as requiring every applicant for surplus funds to give notice to plaintiff. In this case, it is required for the following reasons: notice was given at the sheriff's sale of the additional funds expended by plaintiff for the preservation of the foreclosed premises; Nationscredit [the second mortgagee], a sophisticated active participant in foreclosures, was the purchaser at the sale; the competitive bidding between the parties resulted in a bid in excess of the judgment; and National Mortgage Company did not act in a dilatory manner in filing its application for surplus funds. This opinion does not address how a court should rule if all or some of these facts are not present in a particular case.
>
> [*Id.* at 557, 681 *A.*2d 1232.]

In *National Mortg. Co.* the plaintiff had advised the sheriff by letter of its claims to reimbursement for the expenses incurred subsequent to the judgment of foreclosure, and the sheriff had in turn advised the bidders of the amounts claimed before starting the auction sale. Since the validity of that procedure has not been briefed in the instant case, we will neither endorse nor reject it. However, it would certainly be prudent for a plaintiff to opt instead for amending the judgment prior to the sale. 30 Cunning-

ham and Tischler, *N.J. Practice*, The Law of Mortgages § 381, at 335 (1975). Perhaps an alternative approach might be to include in the original judgment of foreclosure a provision indicating that such expenses were being incurred at specified daily rates and that plaintiff was reserving a right to seek reimbursement from any surplus which might be generated by the sale. At least then a purchaser would have notice of the claim and knowledge of the maximum financial exposure. However, our mention of this possible alternative should not be taken as assurance that it will ultimately be deemed judicially acceptable.

In light of the well-settled principle that a mortgage merges into the judgment of foreclosure, we are satisfied that in the normal course a fair construction of *N.J.S.A.* 2A:50–37 and *R.* 4:64–3 requires rejection of the claim of a foreclosing first mortgagee to any expenses incurred after the final judgment of foreclosure unless that judgment has been amended prior to the sheriff's sale. We leave for another day the question of the effectiveness of other methods of notifying bidders of such claims at a sheriff's foreclosure sale.

Affirmed.