811 A.2d 468 (2002)
356 N.J. Super. 16
REALTY ASSET PROPERTIES, LTD., Plaintiff-Appellant,
v.
David OLDHAM & Mrs. David Oldham, wife of David Oldham; Allen Sauer & Mrs. Allen Sauer, wife of Allen Sauer; The Bank of New York; First Union National Bank; Monmouth Ocean Collection Service Inc.; Gravatt and Son, Inc.; County of Monmouth; State of New Jersey and United States of America, Defendants, and
Hill House Farms, LLC, Betsy Macdonald Cotter, and Township of Millstone, Defendants/Intervenors-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 2002.
Decided December 6, 2002.
*469 Robert W. Keyser argued the cause for appellant (Kaplin, Stewart, Meloff, Reiter and Stein, attorneys; Kelly R. Ramsdell, on the brief).
Michael J. Fasano, Highlands, argued the cause for respondent Township of Millstone *470 (Lomurro, Davison, Eastman and Munoz, attorneys; Edward C. Eastman, Jr., on the brief).
Paul Schafhauser, Morristown, argued the cause for respondents Hill House Farms and Betsy MacDonald Cotter (Herrick, Feinstein, attorneys; Scott T. Tross and Mr. Schafhauser, of counsel and on the brief).
Before Judges WEFING, WECKER and FUENTES.
The opinion of the court was delivered by
FUENTES, J.A.D.
Plaintiff, Realty Asset Properties, Ltd., appeals the dismissal of its foreclosure action initiated pursuant to a tax sale certificate. The Chancery Division/General Equity Part ruled that plaintiff had failed to finalize the foreclosure proceedings within two years of the date the sale was confirmed by the municipal governing body. This failure to act caused the certificate to revert to the municipality by operation of law. N.J.S.A. 54:5-114.5.
Plaintiff argues that the trial court erred by not applying the doctrine of merger. Plaintiff's contention is that because the United States appeared as a lien holder, plaintiff was statutorily required to proceed in the same manner as a mortgage foreclosure, N.J.S.A. 54:5-87, and because a proceeding instituted under N.J.S.A. 54:5-87 results in the merger of the tax sale certificate with the final judgment of foreclosure, the reversion provisions in N.J.S.A. 54:5-114.5 do not apply. We disagree and affirm the ruling of the Chancery Division/General Equity Part.
The facts are not in dispute. On November 9, 1995, Millstone Township (Millstone) acquired a tax sale certificate for the real property described on the municipal tax map as Block 23, Lot 24. N.J.S.A. 54:5-34. The certificate was issued for unpaid real estate taxes for part of 1992 and the years 1993 and 1994. On November 16, 1996, Millstone assigned the certificate to FUNB as Custodian for FUNDCO, Inc. The Millstone governing body formally confirmed the sale of the certificate to FUNDCO in a written resolution adopted on December 4, 1996. Paragraph two of this resolution specifically states:
Pursuant to N.J.S.A. 54:5-114.4 and 114.7 the Assignee's title to the said Tax Sale Certificate shall be forfeited and shall automatically revert back [sic] to the Assignor unless the Assignee forecloses the equity of redemption and records the Final Judgment with the Monmouth County Clerk's Office within two years of the confirmation of the sale by the governing body.
On May 13, 1997, FUNDCO filed a complaint for foreclosure of the tax sale certificate in the Chancery Division/General Equity Part of Monmouth County. The complaint listed the United States as a party since a title search revealed the existence of a federal tax lien.[1] On January 12, 1998, the Court issued a three-part order: (1) substituting Realty Asset Properties, FUNDCO's successor in interest, as the named plaintiff; (2) entering a final judgment of foreclosure; and (3) issuing a Writ of Execution directing the Sheriff of Monmouth County to sell the property at a public auction. The judicial sale was scheduled and adjourned by plaintiff three *471 times, on March 23, April 6, and April 20, 1998.
National Community Bank held a mortgage on the property and obtained a final judgment foreclosing that mortgage. Pursuant to that final judgment a sheriff's sale was held on August 12, 1998, where Better Enterprises, Inc. was the successful bidder.
From May 1998 to November 2001, plaintiff did not take any further action to finalize the tax sale certificate foreclosure proceedings.[2] On February 13, 2001, Millstone filed an in rem foreclosure complaint seeking to obtain title to the property. On November 14, 2001, plaintiff rescheduled its sheriff's sale for December 10, 2001, almost five years after the entry of the final judgment of foreclosure. Millstone and Hill House Farms filed a formal objection to the sheriff's sale with the Chancery Division/General Equity Part. The General Equity Judge found plaintiff's failure to complete the tax foreclosure proceeding by December 4, 1998, caused a reversion of the certificate to the municipality as a matter of law.
Plaintiff's argument is in three parts. The first pertains to the manner of perfecting title. A certified copy of a final judgment in a tax foreclosure proceeding where the United States is not a lien holder can be recorded immediately. N.J.S.A. 54:5-104.65. This has the legal effect of vesting a certificate holder with "an estate in fee simple, in the lands described therein, absolute and free and clear of all liens and encumbrances in accordance with the terms of said judgment." Ibid. By contrast, a final judgment in an action where the United States is a lien holder only triggers the issuance of a writ of execution, commanding the sheriff to schedule a public sale. R. 4:65-2; N.J.S.A. 2A:50-36. Thus, in order to obtain title to the property, the certificate holder must be the highest bidder at the judicial sale. Investors & Lenders, Ltd. v. Finnegan, 249 N.J.Super. 586, 592, 592 A.2d 1244 (Ch.1991); N.J.S.A. 2A:50-37.
The second part of the argument rests upon the applicability of the doctrine of merger. Under the doctrine of merger, the mortgage contract is merged into the final judgment of foreclosure and the mortgage contract is extinguished. In re Roach, 824 F.2d 1370, 1377 (3d Cir.1987); Virginia Beach Fed. v. Bank of New York/ Nat'l Comm. Div., 299 N.J.Super. 181, 188, 690 A.2d 1040 (App.Div.1997); Colonial Bldg.-Loan Ass'n v. Mongiello Bros., 120 N.J. Eq. 270, 184 A. 635 (Ch.1936). Thereafter, the mortgage contract interest rate is replaced by the post-judgment rate permitted under the rules of the court. Plaintiff argues that this also occurs in a tax foreclosure action instituted under the provisions of N.J.S.A. 54:5-87. Upon the entering of a final judgment of foreclosure the 18% interest rate authorized by the Tax Sale Law, N.J.S.A. 54:5 32, drops to the post-judgment rate set by R. 4:42-11. According to plaintiff, this drop in interest rate reflects the merger of the certificate with the final judgment. Resolution Trust Corp. v. Griffin, 290 N.J.Super. 88, 91-92, 674 A.2d 1032 (Ch.1994).
The third and final part of plaintiff's argument is based on the additional procedural steps involved in the administration of a judicial sale. N.J.S.A. 2A:50-64(a)(3) gives the sheriff 120 days after receipt of any writ of execution issued by the court to schedule a judicial sale. N.J.S.A. 2A:17-36 permits two adjournments of the *472 sale "not exceeding 14 calendar days for each adjournment." The statute also authorizes the court to grant additional adjournments upon a showing of good cause. 28 U.S.C.A. 2410(c) gives the United States one year from the date of the sale to redeem the property. In cases such as this one, where the lien arises under the Internal Revenue Code, the time period for redemption is reduced to 120 days from the date of sale. Finally, R. 4:65-5 permits objections to the delivery of a sheriff's deed to be made by motion filed within ten days of the sale and made returnable within twenty days. Thus, plaintiff argues, these procedural events and the time necessary to accommodate them render compliance with the two-year deadline imposed by N.J.S.A. 54:5-114.4 "impossible."
Plaintiff's arguments are undermined by both the law of this State and the facts of this case. We begin our analysis by reaffirming that the rights of a purchaser of a tax sale certificate are solely statutory in origin and are fixed and determined by the Tax Sale Law. Brewer v. Porch, 53 N.J. 167, 178, 249 A.2d 388 (1969); See also Simon v. Deptford Township, 272 N.J.Super. 21, 29, 639 A.2d 328 (App.Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994); Northfield City v. Zell, 12 N.J. Tax 180, 185 (1991). The nature of the rights acquired by the purchaser of a tax sale certificate depend upon the section of the Tax Sale Law under which the sale was made. Dvorkin v. Dover Twp., 29 N.J. 303, 312, 148 A.2d 793 (1959).
Here, plaintiff acquired the tax sale certificate under the provisions of N.J.S.A. 54:5-114.2. One of the statute's principal objectives is:
[T]he return of the property to the paying tax rolls. This was accomplished by providing for mandatory foreclosure at the purchaser's expense of the equity of redemption within two years from the date of confirmation of the assignment at the risk of forfeiting the purchase money.

[Dvorkin v. Dover Twp., supra, 29 N.J. at 311, 148 A.2d 793.]
N.J.S.A. 54:5-114.4 requires the purchaser of a tax sale certificate acquired under the provisions of N.J.S.A. 54:5-114.2 to: "[F]oreclose at their own expense, the right of redemption, and record the final judgment in the county wherein the land is situate within two years from the date of the confirmation of the sale by the governing body." N.J.S.A. 54:5-114.5 authorizes the municipal governing body:
[O]n good cause shown ... [to] extend the time and grant further extension or extensions of time within which the final decree or judgment must be recorded... an application for such extension, further extensions, or extensions of time shall be made to the governing body, before the expiration of the 2-year period or the expiration date or dates of said further extension or extensions[.]
The statute also specifically provides that:
If the final decree or judgment shall not have been recorded within 2 years from the date of the confirmation of the sale, or on the expiration of the extended time or times, then the sale shall be null and void, and the right, title and interest of the purchaser shall cease and revert to the municipality.

[N.J.S.A. 54.5-114.5.]
It is undisputed that plaintiff did not complete the foreclosure process and record the final judgment or decree within two years of the date the Millstone governing body confirmed the sale of the tax certificate. It is also undisputed that plaintiff did not request an extension of time pursuant to N.J.S.A. 54:5-114.5.
Ordinarily, *473 [P]roceedings to foreclose a tax sale certificate are not followed by a public sale, nor by deed from a sheriff or other public official as in a mortgage foreclosure. The final judgment bars rights of redemption, but does not otherwise enlarge the right, title and interest of the certificate holder.
[Borough of Wildwood Crest v. Smith, 210 N.J.Super. 127, 133, 509 A.2d 252 (App.Div.), certif. denied, 107 N.J. 51, 526 A.2d 139 (1986).]
In 1996, the Legislature amended N.J.S.A. 54:5-87 to provide that:
In the event that any federal statute or regulation requires a judicial sale of the property in order to debar and foreclose a mortgage interest or any other lien held by the United States ... then the tax lien may be foreclosed in the same manner as a mortgage, and the final judgment shall provide for issuance of a writ of execution to the sheriff of the county wherein the property is situated and the holding of a judicial sale as in the manner of the foreclosure of a mortgage.
Congress imposed such a requirement in 28 U.S.C.A. § 2410. Under the provisions of this statute, a judicial sale must take place in order to discharge a subordinate lien held by the United States. Plaintiff argues that the 1996 amendment to N.J.S.A. 54:5-87 reflects the legislative intent to exempt tax foreclosure proceedings brought "in the same manner as a mortgage foreclosure" from the two year restriction contained in N.J.S.A. 54:5-114.5.
Legislative intent can be derived from both the actual text in the statute and the objectives sought to be achieved. Foxworth v. Morris, 134 N.J. 284, 287, 633 A.2d 536 (1993) (citing Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992)). Here, the explanatory statement accompanying the 1996 amendment to N.J.S.A. 54:5-87 reveals its singular purpose is to provide a procedural mechanism for foreclosing the interests of the United States in conformance with federal law.
Specifically, this bill amends the current law to provide for a "judicial sale" if a federal lien is involved so that the final judgment of foreclosure can provide for the type of judicial sale required by federal statute and case law. Federal law while permitting the foreclosure of a prior lien precludes the wiping out of a federal lien unless the law provides for a judicial sale as there would be in the case of a foreclosure of a mortgage. This means that there must be a sheriff's sale as a precondition to the barring of the federal lien. In the case of the foreclosure of a mortgage, such judicial sale exists. However, in the case of the foreclosure of a municipally held tax sale certificate, no judicial sale is provided for. Therefore, even though municipalities have the right of foreclosure and priority, they cannot conclude the same because no judicial sale is available to the Federal Government.

[R.S. 54:5-87, Senate No. 1456 Gen. Assem., Reg. Sess. (N.J.1995).]
If a foreclosure proceeding is initiated in a timely manner and thereafter prosecuted with due diligence, the additional procedural requirements involved in bringing about a judicial sale pursuant to N.J.S.A. 54:5-87 can be easily accommodated under the two year limitation imposed by N.J.S.A. 54:5-114.2. However, in the event that additional time is necessary, a certificate holder may request an extension of time from the municipality under N.J.S.A. 54:5-114.5. Here, plaintiff's injury was self-induced. The five-year delay in scheduling a judicial sale is completely attributable to its own failure to act. In fact, as noted earlier in this opinion, plaintiff originally scheduled and adjourned three separate *474 sheriff's sales nine months before the expiration of the two-year deadline established by N.J.S.A. 54:5-114.4.
Although applicable in traditional mortgage foreclosure proceedings, the doctrine of merger has never been applied to the foreclosure of tax sale certificates. Borough of Wildwood Crest v. Smith, supra, 210 N.J.Super. at 133, 509 A.2d 252; Kurzius v. Hillside Land Co., 112 N.J. Eq. 466, 468, 164 A. 687 (Ch.1933). "Merger... is a matter of intention, and is not favored in equity." Kurzius v. Hillside Land Co., supra, 112 N.J. Eq. at 468, 164 A. 687. There is no indication that the Legislature intended any derogation from this well-established legal principle when it amended N.J.S.A. 54:5-87. As a matter of statutory construction, the Legislature is presumed to have been aware of existing laws at the time it amends a statute. Mahwah Twp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985).
Furthermore, the application of the doctrine of merger to the foreclosure of tax sale certificates would defeat the principal reason driving municipal sales of tax sale certificates: "[T]o convert tax sale certificates into usable cash without the necessity of the municipality first proceeding to bar or foreclose the right of redemption..." Dvorkin v. Dover Twp., supra, 29 N.J. at 309, 148 A.2d 793.
We hold that the doctrine of merger is not applicable to foreclosure proceedings brought by a holder of a tax sale certificate under the provisions of N.J.S.A. 54:5-87. Plaintiff's failure to finalize the foreclosure proceedings within two years of the date that the sale was confirmed by Millstone resulted in the automatic reversion of the certificate by operation of law. N.J.S.A. 54:5-114.5.
Affirmed.
NOTES
[1] Defendants argue that this lien had been extinguished by a previous final judgment of mortgage foreclosure. Hence, plaintiff was not legally required to name the United States as party. In light of the title search's disclosure of the existence of the federal tax lien, we are satisfied that plaintiff's decision to proceed pursuant to the provisions of N.J.S.A. 54:5-87 was appropriate.
[2] The only exception to this period of inactivity was a letter dated September 19, 2000, from an attorney on behalf of plaintiff's representative sent to the municipal tax collector in Millstone inquiring as to the status of the tax sale certificate.