864 A.2d 1127

LIBERTY MUTUAL FIRE INSURANCE COMPANY, PLAINTIFF, v.
BRENDAN ALEXANDER, DEFENDANT–APPELLANT, AND
FAIRBANKS CAPITOL CORP., DEFENDANT–RESPONDENT,
AND GMAC, KRAMER, SMITH, TORRES & VALVANO, L.L.C.
DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 9, 2004—Decided January 11, 2005.

Before Judges KESTIN, ALLEY and FUENTES.

*Richard Goldstein* argued the cause for appellant.

*David M. Meth* argued the cause for respondent (*Hall & Hall,* attorneys; *Mr. Meth,* on the brief).

The opinion of the court was delivered by

**ALLEY, J.A.D.**

On February 20, 2003, plaintiff Liberty Mutual Fire Insurance Company filed a complaint seeking a declaratory judgment determining the appropriate allocation of $175,900 in insurance proceeds. This is the amount it had agreed to pay pursuant to a homeowner's insurance policy with fire hazard coverage, under which defendant Brendan Alexander was the named insured, and defendant Fairbanks Capital Corp. was the named mortgagee as the successor in interest to defendant GMAC. Defendant Kramer, Smith, Torres & Valvano was the public adjuster retained by Alexander.

Alexander appeals from the trial court's order that Fairbanks was entitled to $128,081.75 of the proceeds, and Alexander to $47,818.25.

The facts in this case are largely undisputed. Alexander was the mortgagor of a home at 318 North Arlington Avenue in East Orange. Fairbanks was the servicing provider for IMPAC Funding Corporation, which had become the assignee of the mortgage as of March 11, 1998.

As required by the terms of the mortgage, Alexander had maintained homeowners insurance. The policy was issued by Liberty Mutual Insurance Company with a $175,900 policy limit on the dwelling with expanded replacement cost. Fairbanks was named on the declarations page as the sole mortgagee. The mortgage clause provided: "If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear."

The mortgage provided for the application of insurance proceeds as follows:

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair for the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security instrument, whether or not then due with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within [thirty] days a notice

from Lender that the Insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by the Security Instrument, whether or not then due. The 30–day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. *If under paragraph twenty-one the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to acquisition.*

[ (emphasis added).]

Paragraph twenty-one, which is referred to in the foregoing passage, pertained to Fairbanks's "Acceleration Remedies," including judicial foreclosure.

After Alexander defaulted under the terms of the mortgage and Fairbanks initiated a foreclosure action, the court entered a March 9, 2000 final judgment of foreclosure. The judgment ordered that the property be sold to satisfy Alexander's debt to Fairbanks of $147,530.37, "together with lawful interest thereon to be computed from January 20, 2000, with the Plaintiff's cost to be taxed with lawful interest thereon" and counsel fees of $1,575.

On October 23, 2001, Fairbanks purchased the property at the sheriff's sale for the sum of $100. On November 1, 2001, the court nunc pro tunc denied Alexander's motion to stay the October 23, 2001, sale, but also ordered that his right to redeem be extended for forty-five days until December 17, 2001. Notwithstanding that order, on November 16, 2001, one month prior to the expiration of the redemption period, the sheriff delivered the deed to Fairbanks, apparently through inadvertence.

The record contains an undated sales contract for the sale of the property to Lynal Morrison for $160,000, contingent on Morrison's obtaining a mortgage commitment by October 30, 2001. The closing date was set for November 26, 2001, but for reasons that are not clear the sale did not take place. On December 5, 2001, the house was completely destroyed by fire. According to Alexander's certification to the trial court, the buyer backed out of the

contract after the fire. On December 17, 2001, Alexander obtained an estimate of $286,673.37 to rebuild the home.

On January 3, 2002, Fairbanks recorded the sheriff's deed with the Essex County Register. On March 18, 2002, the property was transferred to Essex Investments, Inc., for consideration of $46,000.

Fairbanks asserted a claim against the insurance policy limits of $175,900 as follows:

| | |
|---|---|
| Principal Balance | $124,774.02 |
| Interest through foreclosure sale | 25,107.11 |
| Corporate Advance | 6,890.52 |
| Escrow Advance | 15,060.98 |
| Late Fees | 1,291.24 |
| Legal fees and costs | 957.88 |
| Total | $174,081.75 |

In its April 23, 2003, answer to Liberty Mutual's declaratory judgment action, Fairbanks alleged that it was entitled to the "full amount" of the insurance proceeds ($175,900) because it had obtained title to the property on November 16, 2001, before the December 5, 2001, fire. Fairbanks had never moved for a deficiency judgment in the foreclosure action.

The judge concluded that Fairbanks was entitled to the insurance proceeds in the amount of its claim, $174,081.75, less the fair market value based on the sale of the damaged property for $46,000. The judge observed a distinction between instances where the mortgagee had foreclosed and obtained title before the loss, and those where title was obtained after the loss. Generally, if a mortgagee has title at the time of the loss, it is entitled to the full amount of the insurance proceeds. The trial judge rejected Alexander's argument that the right of redemption that existed "somehow negate[d] the clear transfer of title by sheriff's deed to the mortgagee." He also rejected Alexander's argument that the mortgage merged with the lien.

According to the trial court, Alexander's right of redemption "was an insurable interest existing at the time of the loss" and

entitled Alexander "to the difference between the mortgage lien payoff and the value of the property." If the insurance proceeds had become available at the time of the loss, they would have been used to exercise the redemption since the payoff was less than the proceeds, and thus Alexander "would still have the value of the land." Fairbanks's attorney conceded at argument that Fairbanks "shouldn't get a windfall of getting the $46,000 and the full proceeds" from the insurance. Indeed, Fairbanks does not appeal from the award to Alexander of the $46,000 representing the value of the land based on the sale to the third party.

Alexander contends that Fairbanks "had the choice of two inconsistent remedies" and chose to retain the deed to the land, thus precluding it from also obtaining the insurance proceeds. According to Alexander, Fairbanks was required to choose between "two inconsistent remedies," under which it "could have accepted the insurance proceeds in full satisfaction of the debt or it could have accepted and retained the sheriff's deed in full satisfaction of the debt." Alexander offers no legal support, however, for his contention that these were the two legal options applicable in these circumstances; he merely so characterizes them and declares that Fairbanks therefore was required to choose.

Although it appears that the specific issue of whether the mortgagee or the mortgagor is entitled to insurance proceeds when a property is damaged during a redemption period, but after the deed has been delivered, has not been resolved in case law, we conclude that the trial court was correct in determining that Fairbanks was entitled to an award of the insurance proceeds to the extent of its mortgage payoff, but that Alexander was entitled to a credit for the value of the damaged property that Fairbanks had obtained from the subsequent purchaser.

A judicial sale without an actual transfer of title is merely a contract for sale that does not extinguish the insured's interest in his or her homeowner's fire insurance policy. *Marts v.*

*Cumberland Ins. Co.,* 44 *N.J.L.* 478, 482 (Sup.Ct.1882). The mortgage debt remains, and the homeowner is entitled to use the property to pay off the debt. *Ibid.* If, however, the property owner remains the titled owner of the property, a mortgagee has the right to apply fire insurance proceeds to the outstanding debt in the absence of any agreement to the contrary that provided the property owner with the right to use fire insurance proceeds to rebuild or repair the damaged property. *Gen. G.M.C. Sales, Inc. v. Passarella,* 195 *N.J.Super.* 614, 621, 481 *A.*2d 307 (App.Div. 1984), *aff'd o.b.,* 101 *N.J.* 12, 499 *A.*2d 1017 (1985).[1] A mortgagee will not be forced to convert a mortgage loan into a construction loan or to become a mortgagor's partner in rebuilding a structure. *Id.* at 624, 481 *A.*2d 307. Instead, the mortgagor's debt is reduced by an amount equal to the reduction in value of the building caused by the fire so that, relatively, the parties retain the same position they held prior to the fire. *Id.* at 623, 481 *A.*2d 307.

■ Where, however, a mortgagee's interest in the property has increased to ownership through its purchase of the property at a foreclosure sale, its coverage under the insurance policy also increases beyond its security interest. *495 Corp. v. N.J. Ins. Underwriting Ass'n,* 86 *N.J.* 159, 165, 430 *A.*2d 203 (1981). A mortgagee may recover under the mortgagor's insurance policy "for the losses incurred after it acquired title without regard to either the amount of the loan secured by the property or the amount of outstanding debt owed by the mortgagor at the time of acquisition." *Id.* at 167, 430 *A.*2d 203.

The present facts are unusual because it appears that the deed may have been mistakenly delivered. Normally, delivery of the deed will not occur during the ten-day redemption period established in the court rules, nor prior to confirmation of the sale if a notice of motion objecting to the sale is filed within the ten-day

---

[1] The Court declined to "imply[ ] any view in respect of the applicability of today's decision to residential property." *Gen. G.M.C. Sales, Inc. v. Passarella, supra,* 101 *N.J.* at 12, 499 *A.*2d 1017.

period. *See R.* 4:65–5 (establishing the ten-day time period allotted for objections to the sale of real estate). In *Sovereign Bank, FSB v. Kuelzow,* 297 *N.J.Super.* 187, 196, 687 *A.*2d 1039 (App.Div. 1997), the court observed that the mortgagors' "equity of redemption [was not] cut off [until] delivery of the sheriff's deed." *Ibid.* But Alexander never moved to rescind the delivery of the deed, thus incongruously allowing the transfer of title to be effected during the redemption period.

Here, the trial judge was correct in understanding that the result would have been the same even if Alexander had been deemed to be the titled owner to the property. Alexander possessed the right of redemption at the time of the fire and the available proceeds would have been applied to the amount of the mortgage debt, in which case Alexander would have been left with the land. The land had been sold to a third party. But Alexander received the market value of the land. He thus was in the same position he would have been in if he had received the deed in exchange for extinguishment of the mortgage by payment of the insurance proceeds to Fairbanks.

 Alexander offers no convincing support for his surprising contention that Fairbanks was required either to accept the deed to the damaged property in full satisfaction of the mortgage debt, while he obtained the full amount of the insurance proceeds, or to accept the insurance proceeds but return the deed. The mortgage debt was secured by the property, which included the land and a house, in its undamaged condition; Fairbanks was not required to accept in full satisfaction of that debt a deed that represented land and a completely destroyed building. Moreover, assuming the validity of Alexander's argument that Fairbanks was required to make do with the deed to the damaged property in satisfaction of the debt, Alexander does not explain how he then would be entitled to the proceeds of insurance on a piece of property that he did not own on the date of the fire. As to Alexander's alternate argument that Fairbanks was required to accept the insurance proceeds but return the deed to Alexander, the effect of the trial

court's decision was that Fairbanks accepted the insurance proceeds in full satisfaction of the debt, while Alexander was awarded the equivalent value of the deed as measured by the sale of the property to the third party. Clearly, it was no longer feasible to return Alexander to the actual position of titled owner once the property had been sold to a third party. None of the participants moved to set aside that transaction. By crediting Alexander with the value of the property, however, the trial court's decision placed him in the same financial position he would have been in if he had received the actual deed.

We thus affirm the trial court's decision and reject Alexander's argument that Fairbanks's retention of the deed precluded it from also obtaining any insurance proceeds.

 Alexander also argues that Fairbanks was not entitled to insurance proceeds because Fairbanks had not moved for a deficiency judgment. This argument has no merit, however.

Alexander points to a statute that sets forth the procedure to collect a mortgage debt by foreclosure, under which, after a mortgage is foreclosed, within three months of the sale, the mortgagee can maintain "an action on the bond or note for any deficiency, if, at the sale in the foreclosure proceeding, the mortgaged premises do not bring an amount sufficient to satisfy the debt, interest and costs." *N.J.S.A.* 2A:50–2. Alexander contends that Fairbanks cannot collect the insurance proceeds because it never instituted a deficiency action.

Alexander relies on *First Federal Savings and Loan Association v. Nieder,* 163 *N.J.Super.* 308, 394 *A.*2d 896 (App.Div.1978), to support this argument, but *Nieder* states the opposite principle. There, the mortgaged property was damaged by fire prior to the institution of foreclosure proceedings. *Id.* at 311, 394 *A.*2d 896. Both the mortgagor and mortgagee claimed entitlement to the insurance proceeds. *Ibid.* The mortgagee had obtained a deficiency judgment at the time the proceeds were distributed, and thus

"the deficiency amount could not constitute a prior lien" on the mortgagor's insurance recovery. *Ibid.*

Nevertheless, the mortgagee "had a prior right to the fund under a trust theory by reason of the [mortgage] provision[s]" that required the mortgagor to insure the property for the mortgagee's benefit. *Id.* at 311–12, 394 *A.*2d 896. The court was unable "to perceive any equitable or legal basis on which the mortgagee can be deprived of its essential subrogee status in respect of the fund in question." *Id.* at 312, 394 *A.*2d 896. Notwithstanding the absence of an action for a deficiency judgment, Fairbanks cannot be deprived of its right to collect the amount of the insurance proceeds to the extent of the unpaid mortgage debt.

 We also reject Alexander's assertion that his insurable interest was not diminished solely because it consisted of an equity of redemption, and therefore his "reasonable expectation" as an insured was to receive the full value of the property because he had been paying the insurance premiums, was the named insured, and lived on the property at the time of the loss. Plaintiff is correct that it is a fundamental principle of insurance law that insurance contracts will be construed to fulfill the reasonable expectations of the average insured. *Progressive Cas. Ins. Co. v. Hurley,* 166 *N.J.* 260, 274, 765 *A.*2d 195 (2001).

 The insurance company's agreement to pay the policy limits was, however, fully consistent with Alexander's expectation that he was insured for the full value of the policy. Neither the insurance contract nor the mortgage agreement supports an expectation by Alexander that he would receive the entire amount of the insurance proceeds. The standard mortgage clause in a homeowner's insurance policy is an independent agreement between the insurer and the mortgagee that entitles the mortgagee to recover the insurance proceeds for damages to the insured's property whether or not the insurer has any defenses against the insured. *495 Corp. v. N.J. Underwriting Ass'n, supra,* 86 *N.J.* at 163, 430 *A.*2d 203. The policy named Fairbanks as the mortgagee and provided for payment by the insurer "as interests appear."

■ Thus, even prior to foreclosure, the insurance contract limited Alexander's right to the proceeds to his "interest" in the property. Alexander's interest was the difference between the amount of his mortgage debt and the value of the property. This is what he received. He offers no support for his theory that his interest increased after foreclosure. He acknowledges that at the time of the loss, his interest consisted only of his equity of redemption, which afforded him the right to retain the property if he paid the mortgage debt in full. This interest was fully realized by the trial court's decision that used the insurance proceeds to pay the debt and awarded Alexander the equivalent value of the property.

Furthermore, the parties' mortgage agreement notified Alexander that, in the event of a judicial sale, his right to the insurance proceeds would pass to Fairbanks "to the extent of the sums secured by this Security instrument immediately prior to acquisition." Given that the sale had occurred, Alexander could have had no expectation that he would receive the full amount of the proceeds.

■ Alexander further argues that Fairbanks "probably" should not have been expected to have been covered under his policy "at all," and if it was, then "common sense would dictate that it would at least provide for review of the insurance policy each time it is renewed." This contention has no merit. It is indisputable that Alexander's mortgage agreement required him to insure the property, and that Fairbanks was named as the mortgagee under the policy. Nothing in the parties' agreement required Fairbanks to review the insurance policy. Its failure to do so cannot be claimed as a basis to argue that it was not covered under the policy's provisions.

■ Likewise without merit is Alexander's argument that Fairbanks is not entitled to collect the insurance proceeds because the mortgage merged into the foreclosure judgment and had no legal validity.

Upon judgment of foreclosure, the debt instrument and the mortgage instrument merge, which finalizes the amount of the debt and precludes any claim by the mortgagee for the collection of more than is due on a single instrument. *Deshler v. Holmes,* 44 *N.J. Eq.* 581, 584–88, 18 *A.* 75 (E. & A. 1888). But the judgment of foreclosure did not extinguish either Alexander's debt or Fairbanks's interest in the property. *Ibid.*

The case cited in Alexander's brief, *Virginia Beach Fed'l v. Bank of N.Y.,* 299 *N.J.Super.* 181, 690 *A.*2d 1040 (App.Div.1997), does not support his contention. In that case, the foreclosing mortgagee was not the purchaser at the sheriff's sale. Additionally, as we note below, the case involved a question of whether the foreclosing mortgagee was entitled to claim distribution of surplus monies from a foreclosure sale, over and above the amount of the foreclosed debt. *Id.* at 182–83, 690 *A.*2d 1040. Nothing in the court's opinion prevented the mortgagee from receiving an amount equivalent to the debt.

Moreover, because the loss occurred prior to the end of the redemption period, the foreclosure action was not totally concluded. *Sovereign Bank, FSB v. Kuelzow, supra,* 297 *N.J.Super.* at 196, 687 *A.*2d 1039. Until that time, principles of equity govern the parties' dispute. *Ibid.* "Principles of equity must be applied in light of the totality of the circumstances." *Heuer v. Heuer,* 152 *N.J.* 226, 235, 704 *A.*2d 913 (1998). In this case, application of the insurance proceeds to the payoff amount, while crediting Alexander with the value of the damaged property that he would have retained if he had received the insurance proceeds at the time of the fire, meant that neither party received a windfall nor sustained a loss beyond their reasonable expectations.

Consequently, we reject Alexander's contention that Fairbanks is not entitled to collect the insurance proceeds because the mortgage merged into the foreclosure judgment.

Finally, Alexander argues that the trial court erred in awarding Fairbanks an amount in excess of the foreclosure judgment be-

cause Fairbanks had never moved to amend the judgment before the sheriff's sale. Alexander contends that the court improperly accepted Fairbanks's contention that it was owed $174,081.75, because this amount exceeded the $142,530.37, awarded in the foreclosure judgment. He asserts that Fairbanks was entitled to a final award of no more than $96,530.37, after having received a credit for the $46,000 achieved in the sale of the damaged property.

■ Alexander is correct that Fairbanks was not entitled to claim monies for items not awarded in the judgment of foreclosure, but the record is unclear as to what items were included in the lump sum foreclosure award. We thus remand the matter only for determination of the amount and recalculation, if necessary.

■ A petition for the right to surplus monies to cover expenses not claimed in the judgment of foreclosure or the writ of execution must be made to the court. *Virginia Beach Fed'l v. Bank of N.Y., supra,* 299 *N.J.Super.* at 181–88, 690 *A.*2d 1040; *R.* 4:64–3. It is undisputed that Fairbanks never made such a claim. The problem in this case is that it is not possible to determine from the record which of the six different components of Fairbanks's claim to $174,081.75 were addressed in the judgment of foreclosure, which awarded plaintiff a lump sum of $142.530.37, plus interest, court costs, and attorneys' fees of $1575. According to the judgment, Fairbanks was entitled to interest, but its claim against the insurance proceeds also sought monies for a "corporate advance," an "escrow advance," and "late fees." It is unclear whether any of these items were included in the lump sum award in the foreclosure judgment.

We thus are constrained to remand, with the remand limited to requiring the trial court to determine whether the items listed in Fairbanks's claim against the insurance proceeds in fact represented the same items that it was awarded the right to collect by the foreclosure judgment.

Affirmed, except that in accordance with the foregoing we remand for a determination of the proper amount of the award and recalculation, if necessary. We do not retain jurisdiction.